**GREYHOUND LINES, INC.**

v.

**Russell SHARPE and Owen B. Sharpe, d/b/a Old Hickory Inn.**

Civ. No. 3–82–705.

United States District Court, E.D. Tennessee, N.D.

April 29, 1983.

---

Charles G. Taylor, III, Knoxville, Tenn., for plaintiff.

Lynn Tarpy, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

This is an action to recover deposits and advance payments for hotel rooms reserved for use during the 1982 World's Fair in Knoxville, Tennessee. Defendants, Russell Sharpe and Owen B. Sharpe, d/b/a Old Hickory Inn, counterclaimed for monies allegedly due on vouchers defendants accepted from plaintiff's customers and for lost profits on unused hotel rooms allegedly reserved by plaintiff, Greyhound Lines, Inc. The following constitutes the Court's findings of fact and conclusions of law.

Plaintiff is in the business of promoting and selling tours. As part of its business, it arranges for hotel accommodations for its customers. In late 1981 a representative of defendants contacted plaintiff regarding a hotel to be built in Knoxville for use during the 1982 World's Fair. On February 3, 1982 the parties reached a written agreement reserving a block of 40 rooms for plaintiff's use in defendants' hotel, the Old Hickory Inn. Although Russell Sharpe was apparently the owner of the hotel, his father Owen B. Sharpe was also involved in the hotel's construction and promoting the enterprise.

The contract provided that Greyhound pay an initial deposit of $25,000.00 for the accommodations. Paragraph 7 further stated, "Should Greyhound fail to abide by the cancellation provisions stated in paragraphs 8 and 9 herein, the cancellation charges shall be withdrawn from this deposit." Paragraphs 8 and 9 provided as follows:

8. CANCELLATIONS: RESERVED ROOMS. In the event that any Greyhound patron for whom individual reservations have been made pursuant to Paragraph 3, herein, shall thereafter cancel his tour, Greyhound shall not be obligated to pay the charges for any such rooms if Greyhound has given the Hotel Company 45 days prior notice that such rooms will not be required. In the event Greyhound shall fail to give such notice, Greyhound shall pay to the Hotel Company the charges for such rooms for each day of such cancelled reservation if the Hotel Company, after reasonable efforts, has been unable to let such rooms to others.

9. CANCELLATIONS: UNRESERVED ROOMS. In the event Grey-

hound fails to obtain reservations for Greyhound rooms from time to time, Greyhound shall not be obligated to pay the charges for such rooms for any day when Greyhound has given the Hotel Company at least *45* days prior notice that such rooms will not be required. In the event Greyhound shall fail to give such notice, and if the Hotel Company, after reasonable efforts, has been unable to let such rooms to others, Greyhound shall pay to the Hotel Company the charges for such rooms for each day of any period of days during which Greyhound patrons do not use the rooms without notice of cancellation.

On February 8, 1982 the parties signed an "Addendum" to the Agreement. It provided for an additional $50,000.00 prepayment by plaintiff. It further provided:

That on May 15, 1982, it is understood by the contracting parties that the regular prepayment schedule incorporated herein may be cut back by Greyhound Lines, Inc. to 75% of what would otherwise be allowed under this contract until all advances received by Old Hickory Inn in the amount of $75,000.00, are repaid to Greyhound Lines, Inc., by the recoupment of this 25% cut back in prepayment.

Pursuant to the agreement plaintiff advanced $75,000.00 to defendants before the World's Fair. This amount was to be recovered by Greyhound withholding 25% of the room payment made by plaintiff's customers as the rooms were used.

In early May 1982 at the beginning of the Fair plaintiff was able to meet its room usage projections. Subsequently, however, plaintiff received a significant number of cancellations. On June 10, 1982, plaintiff notified defendants that it was giving 45 days notice of the cancellation of a large number of rooms. Plaintiff also notified defendants that it would begin withholding 75% of the room payments, as provided in the Addendum.

At the completion of the Fair, defendants still retained $52,985.02 of the original $75,000.00 prepayment. Plaintiff contends that it is entitled to this amount.

Defendants say that in March 1982 an employee of the plaintiff assured them that projections indicated that plaintiff would use 80% of Old Hickory Inn's capacity during the World's Fair. Plaintiff says, and the Court finds that these discussions were only projections and no guarantee of the anticipated room usage by plaintiff's customers. Plaintiff never waived its right to cancel rooms with 45 days notice, as provided in the agreement.

■ The cardinal rule for interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn. 1975). Where clear contract language reveals the intent of the parties, there is no need to apply rules of construction. *Oman Construction Co. v. Tennessee Valley Authority,* 486 F.Supp. 375, 382 (M.D.Tenn. 1979). If the contract is ambiguous or silent on its face, however, the intention of the parties must be gathered from the whole instrument taken in connection with the surrounding circumstances. *See Dearing v. Brush Creek Coal Co.,* 182 Tenn. 302, 186 S.W.2d 329 (1945).

■ In the instant case, the contract is silent on the consequences of plaintiff's failure to recoup its prepayment during the course of the 1982 World's Fair. Of significance, however, is language in the Addendum indicating that full repayment of "all advances" was contemplated by the parties. Furthermore, paragraphs 8 and 9 of the Agreement clearly state that Greyhound would not be obligated to pay the "charges" for any reserved rooms if it gave 45 days prior notice that the rooms would not be required. As the $75,000.00 was only an advance on the charges, Greyhound is entitled to reimbursement of all advance payments not credited toward the use of rooms during the Fair. The record will also support the conclusion that if defendants retain these substantial advances, they will be unjustly enriched beyond the services actu-

ally provided. This is not the basis of the Court's decision, however.

■ As to the counterclaim, there is no merit in counter-plaintiffs' contention that Greyhound Lines was under an obligation to rent all of the reserved rooms or that the Agreement was so modified. Greyhound Lines clearly had a right to cancel under the Agreement.

■ Counter-plaintiffs also claim reimbursement of monies owed for their acceptance of Greyhound travel vouchers from individual hotel guests during the World's Fair. Greyhound Lines admits that it failed to pay the $12,397.13 demanded by counter-plaintiffs. Greyhound Lines says, however, that in calculating the amount sought in the main action it gave full credit for money owed counter-plaintiffs for honoring the Greyhound vouchers. Although the record is not absolutely clear on this point, the Court is unable to find to the contrary. Since the amount sought in the counter-claim has been set-off against defendants' debt to plaintiff, the counter-claim must be dismissed.

In accordance with the above, it is ORDERED that in the main action judgment enter in favor of plaintiff against defendants, Russell Sharpe and Owen B. Sharpe, d/b/a Old Hickory Inn, in the amount of $52,985.02. It is further ORDERED that the counter-claim be, and the same hereby is, dismissed.

Order Accordingly.