James **PINKLEY**, Plaintiff-Appellant,

v.

**SEABOARD SYSTEM RAILROAD,**
Defendant-Appellee.

No. 86–5266.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 12, 1986.

Decided March 13, 1987.

D.D. Maddox (argued), Maddox and Maddox, Huntingdon, Tenn., for plaintiff-appellant.

Tyree B. Harris (argued), Dodson, Harris, Robinson, Aden, Nashville, Tenn., George O. Benton, Jackson, Tenn., for defendant-appellee.

Before ENGEL and JONES, Circuit Judges, and ALLEN, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-Appellant James Pinkley appeals the district court's judgment granting Defendant-Appellee Seaboard System Railroad's (Seaboard) motion for a directed verdict in this labor contract dispute. We affirm the district court's judgment.

Pinkley was a long-time employee of Seaboard. He was hired in 1943 by a predecessor railroad that later merged with Seaboard and continued working for Seaboard until his retirement in 1983. In 1975, Pinkley received a promotion and became a noncontract employee entitled to a pension from Seaboard upon his retirement. On July 18, 1983, Seaboard received Pinkley's application for retirement. Pinkley had executed the application on July 14. In the application, Pinkley stated that his final day of work would be July 29, 1983, but that he would remain employed by Seaboard until August 31, 1983, due to twenty-five days of accrued vacation time. In effect, Pinkley's retirement would commence on September 1, 1983. The retirement application contained a clause that stated that although Pinkley's company pension would not begin until after his vacation time had been taken, i.e., after August 31, 1983, his Railroad Retirement annuity could begin on the day following his last day of actual work, i.e., August 1, 1983 (July 29 was a Friday).

On July 20, 1983, Pinkley received a letter and application from the United States Railroad Retirement Board informing him of his eligibility for a Railroad Retirement annuity. Pinkley completed and filed the application on August 2, 1983. In the application, he stated that his last day of work was July 31, 1983. Pinkley also stated in the application that he relinquished his right to return to work for Seaboard on July 31, 1983. A railroad employee who applies for an annuity under the Railroad Retirement Act, 45 U.S.C. §§ 231 et seq. (1982), must relinquish his right to return to work for his employer before annuity payments can be made.

Shortly after receiving his application, the Railroad Retirement Board authorized the payment of Pinkley's retirement annuity for the month of August 1983. Sometime that month, Pinkley received a check from the Board for $999.00. On October 26, 1983, Pinkley received a form from the Railroad Retirement Board that listed his last day of work and the date he relinquished his right to return to work as July 31, 1983. The letter also stated that Pinkley's monthly annuity payment would be fixed at $1,138.73, retroactive to August 1, 1983.

On August 15, 1983, Pinkley received a form letter from Seaboard offering currently active employees $15,000 to 1) voluntarily terminate their employment by August 31, 1983, and 2) waive any further employment rights. The letter was mailed to all noncontract employees 56 years of age or older who were on the payroll for the month of July 1983. The letter con-

---

* The Honorable Charles M. Allen, Senior Judge, United States District Court for the Western District of Kentucky, sitting by designation.

tained a "Confirmation of Acceptance" form whereby an employee who so desired could accept Seaboard's offer. Pinkley completed and returned this form to Seaboard, indicating that he confirmed his earlier decision to voluntarily terminate his employment and waive all further employment rights. On August 15, 1983, Pinkley executed a purported resignation form, whereby he resigned employment from Seaboard effective August 31, 1983, and relinquished all further rights to return to work after that date.

On August 31, 1983, Seaboard sent Pinkley a Mailgram stating that the offer made generally on August 15 was not applicable to him because it was extended only to active employees and Pinkley was not an active employee at the time the offer was made. Thereafter, Pinkley commenced this action by filing a complaint in the Chancery Court for Carroll County, Tennessee, seeking enforcement of the purported contract. Seaboard then filed a petition for removal to the United States District Court for the Western District of Tennessee. The petition was granted.

The case was brought to trial and following the close of proof, both parties moved for a directed verdict. The judge dismissed the jury and granted Seaboard's motion. In its order granting the motion, the court concluded that although Pinkley was still technically an active employee at the time the offer was made, the facts of the case did not support his claim that he and Seaboard had entered into a valid contract. The court noted that:

> Defendant could have no purpose in making the $15,000 offer other than to induce employees to retire early. Defendant simply had no reason to offer Plaintiff $15,000 to retire when Plaintiff had already committed formally to retire. If the court were to find that a valid contract existed, the effect would be in essence to award Plaintiff a bonus.
>
> In light of the circumstances surrounding this offer, the court concludes that Defendant never intended Plaintiff to be an offeree capable of accepting this offer. Specifically, the Court finds that

Plaintiff, having already voluntarily terminated his employment, regardless of when such termination was effective, was no longer in that class of employees who could voluntarily terminate their employment when the offer was made.

Jt.App. at 46. The court went on to state that even if the offer and acceptance were not defective, the contract would still fail due to lack of consideration on Pinkley's part. The court pointed out that since Pinkley had already formally committed to retire prior to the time the offer was made, he had nothing to give or forbear in consideration of Seaboard's offer of $15,000. Pinkley now appeals the district court's order directing a verdict in Seaboard's favor.

"A federal court sitting in a diversity case must apply the directed verdict standard of the state whose substantive law governs the action." *Rhea v. Massey-Ferguson, Inc.,* 767 F.2d 266, 269 (6th Cir. 1985). Under Tennessee law, "[a] verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion." *Holmes v. Wilson,* 551 S.W.2d 682, 685 (Tenn.1977). A trial court faced with a motion for a directed verdict must "take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence." *Id.*

On appeal, Pinkley contends that the court erred in granting Seaboard's motion for a directed verdict. Specifically, Pinkley argues that since he was an active employee at the time Seaboard's offer was made, he was included among those with whom Seaboard sought to contract. Seaboard, on the other hand, asserts that it never intended to make an offer to Pinkley. Seaboard contends that its offer was directed only at active employees who had not yet relinquished their employment rights.

"The cardinal rule for interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention."

*Greyhound Lines, Inc. v. Sharpe,* 565 F.Supp. 419, 421 (E.D.Tenn.1983) (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn.1975)). The intent of the parties is significant not only in construing a contract, but also in determining whether the parties intended to enter into a contract.

The district court in this case examined the facts and concluded that Seaboard never intended Pinkley to be an offeree capable of accepting the offer made to active employees. The court's conclusion is amply supported by the record. The issue raised by this case was whether Seaboard intended to pay $15,000 as an inducement to retire to an employee who had already committed to retirement. Seaboard had absolutely nothing to gain by making such an offer to Pinkley. Seaboard's purpose in making the offer was to persuade its older employees to accept early retirement. At the time the offer was made, Pinkley had already announced his intention to retire, completed the necessary paper work, relinquished his right to return to work, and commenced receiving his Railroad Retirement annuity. For all intents and purposes, Pinkley had already retired at the time the offer was made. A reasonable mind examining these facts can draw only one conclusion—that being that Seaboard did not intend to enter into a contract with Pinkley securing his early retirement in return for $15,000. Therefore, the district court properly granted Seaboard's motion for a directed verdict.

Accordingly, the district court's judgment is AFFIRMED.