### V. *Liability of MBank for the Preferential Transfer*

Blue Quail has no valid claim against MBank for reimbursement for any amounts Blue Quail has to pay the trustee under the trustee's preference claim, just as the trustee has no preference challenge against MBank. Blue Quail received the preferential transfer, not MBank. MBank gave new value in exchange for the increased security interest in its favor. Thus, it is insulated from any assertion of a voidable preference. The bank in no way assumed the risk of a preference attack by issuing the letter of credit. For these reasons, we affirm the district court's dismissal of Blue Quail's request to proceed against MBank for reimbursement.[13]

In addition, the trustee may not set aside the $1,463.61 fee Compton paid MBank to issue the letter of credit. This payment is not a preferential transfer. MBank has fully performed its duties under the terms of the letter of credit and has earned this fee. The services MBank rendered in issuing and executing the letter of credit constitute new value under the 11 U.S.C. § 547(c)(1) preference exception.

### VI. *Conclusion*

Blue Quail Energy received an indirect preferential transfer from Compton Corporation on May 6, 1982, one day prior to the filing of Compton's bankruptcy petition. We reverse the district court and render judgment in favor of Trustee Kellogg against Blue Quail Energy, Inc. in the amount of $585,443.85 plus interest to be fixed by the district court pursuant to 11 U.S.C. §§ 547, 550. The district court's dismissal of Blue Quail's claim against MBank for reimbursement is affirmed.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.

**GRANTHAM AND MANN, INC., d/b/a Grantham Safety Industries, Inc., Plaintiff–Appellant,**

v.

**AMERICAN SAFETY PRODUCTS, INC., Sam Evans, Richard J. Althoff and James Hunneke, Defendants–Appellees.**

No. 85–5857.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1986.

Decided Sept. 30, 1987.

---

William Woodward Webb (argued), Broughton, Wilkins, Webb, Gammon, Raleigh, N.C., Donna L. Pierce, Chambliss, Bahner, Crutchfield, Gaston and Irvine, Chattanooga, Tenn., for plaintiff-appellant.

John W. Murrey, III, Witt, Gaither & Whitaker, Chattanooga, Tenn., Thomas A. Farr (argued), Maupin Taylor Ellis & Adams, John T. Williamson, Raleigh, N.C., for defendants-appellees.

Before JONES and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Plaintiff-appellant Grantham and Mann, Inc. ("Grantham") appeals the district court's judgment notwithstanding the verdict ("j.n.o.v.") in favor of defendants-appellees American Safety Products, Inc. ("ASP") and three of its corporate officers following a jury verdict finding that the defendants had breached a contract with Grantham. This diversity case also involved allegations of unfair trade practices and a violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982). Grantham contends on appeal that the district court erred in finding that the jury's award of damages was too speculative to be sustained, in granting a directed verdict in favor of the defendants on its RICO claim, in granting summary judgment to ASP on its claims brought pursuant to the North Carolina Unfair Trade Practices Act ("N.C. Act") and the Tennessee Consumer Protection Act ("TCPA"), and in excluding certain evidence during the course of trial. We hold that deficiencies in Grantham's proof of damages warranted the district court's grant of j.n.o.v. to ASP on the breach of contract claim and its treatment of Grantham's RICO and N.C. Act claims. In addition, we conclude that a reasonable factfinder could not have found that the alleged RICO violations caused any injury Grantham might have sustained, that the corporation was an improper party to initiate a private suit under the TCPA, and that errors in the trial court's evidentiary rulings, if any, were harmless. Accordingly, we affirm the district court in all respects.

I. The Facts

ASP is a Tennessee corporation formed in February, 1981 to engage in the business of manufacturing and selling fire extinguishers. On May 12, 1982, ASP entered into a distributorship agreement with Grantham, a North Carolina corporation formed by its sole shareholders, John D. Grantham ("Mr. Grantham") and William C. Mann, for the purpose of selling ASP's product. Under this agreement, Grantham was given master distributorship rights for thirty-four counties of eastern and central North Carolina ("Grantham I") in exchange for an initial purchase of $25,000 worth of inventory from ASP. The contract afforded Grantham a sixty percent discount on inventory purchased from ASP and prohibited ASP from itself selling products in the territory covered by the contract or selling inventory to a third party if that party planned sales within Grantham's area. To remain the master distributor in Grantham I, Grantham agreed to purchase an additional $25,000 in inventory from ASP within six months, and an equal amount every

three months thereafter. Additionally, the contract gave Grantham a right of first refusal for the master distributor rights for those areas of North Carolina not covered by distributorship agreements. By virtue of this provision, Grantham could foreclose ASP's granting of a master distributorship to another by matching the terms negotiated between ASP and the third party and taking over the territory itself.

On June 1, 1982, defendant-appellee James Hunneke, ASP's sales manager, informed Mr. Grantham by telephone that ASP had a party interested in a distributorship. Although Mr. Grantham reminded Hunneke of Grantham's right of first refusal, he learned at ASP's first annual sales meeting a few days later that ASP had already entered into a distributorship agreement with Charles Wood covering a twenty-one county area in the western part of the state. Hunneke initially informed Mr. Grantham that nothing could be done about this situation, but called a few days later to explain that the sale of the western counties had been a mistake, and that ASP would do whatever Grantham wanted to make up for it, including rescission of the Wood contract. Grantham declined this offer, but after a month of negotiations, the "Wood incident" terminated with a settlement resulting in a second distributorship contract between Grantham and ASP. This new agreement gave Grantham the master distributorship rights for twenty-five additional counties contiguous to Grantham's original territory ("Grantham II"). Under this July agreement, Grantham confirmed the $25,000 inventory purchase and repurchase provisions regarding Grantham I, and agreed to identical provisions for the purchase and repurchase of inventory to cover Grantham II, thereby requiring Grantham to purchase a total of $50,000 of initial inventory, an additional $50,000 in six months, and $50,000 worth of products every three months thereafter. In addition, a more detailed right of first refusal in the second contract gave Grantham seven days from the receipt of written notification to exercise its refusal right and required ASP, upon request, to disclose to Grantham all of its previous agreements, contracts, letters and other communications with any third party who was interested in purchasing the distributorship area.

In August, Mr. Grantham received another phone call and a letter, both from Hunneke, informing him that ASP had a definite offer for the purchase of a fifteen county distributorship around Charlotte, North Carolina for $40,000.00. Grantham, through its own investigation, determined that the potential purchaser was Larry Surber. Surber was not allowed to testify before the jury, but his proffered testimony indicated that although ASP had asked $40,000 for the distributorship, no firm offer had been made by him. Surber also indicated that Hunneke had suggested that if Grantham contacted Surber, Surber should inform Grantham that the offer was for $50,000. At any rate, negotiations between ASP and Surber broke down, and the "Surber incident" ended with no further action on Grantham's part.

The last incident forming the basis for Grantham's action, the "Day incident," occurred in October, 1982. Defendant-appellee Richard J. Althoff, the president of ASP, notified Grantham by letter dated October 8 that ASP had "an interested party for the distributorship covering the Winston–Salem and Charlotte areas." Grantham received the letter on October 14, and immediately wrote ASP requesting that Grantham be informed when a "firm bid" was received, the identity of the potential purchaser, and copies of all correspondence related to the negotiations. By letter dated October 19, Althoff responded that ASP had already notified Grantham as required by their contract with the October 8 letter, and informed Grantham that the purchaser's name was Frank Day, and that the purchase price was $65,000. This letter was received by Grantham on October 27, but in the interim, on October 22, ASP had granted a distributorship to Day (the "Day territory") by an agreement calling for Day to purchase $65,000 in inventory each quarter for a period of five years.

Grantham instituted suit against ASP in the United States District Court for the Middle District of North Carolina on February 15, 1983, claiming that ASP had breached the contract with Grantham when it granted Day a distributorship without affording Grantham the opportunity to exercise its right of first refusal. The complaint also alleged that throughout its dealing with Grantham, ASP had violated both the N.C. Act and RICO. In addition to ASP, Grantham named Sam Evans (ASP's Chairman of the Board), Althoff, and Hunneke as individual defendants. On October 1, 1984, the case was transferred to the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1406(a)(1982). Thereafter, the Tennessee district court granted ASP's motion for summary judgment on Grantham's claimed N.C. Act violation. Grantham was permitted to substitute for this claim an alleged violation of the TCPA, but prior to trial the district court also granted summary judgment to ASP on that claim. Hunneke was also dismissed from the suit prior to trial.

The case went to trial on July 15, 1985. At the end of Grantham's proof, the district court directed a verdict in favor of the remaining defendants on Grantham's RICO claim, leaving only Grantham's breach of contract claim to be submitted to the jury. On July 18, 1985, the jury returned a verdict for Grantham in the amount of $350,-000 plus interest. The district court, however, granted ASP's j.n.o.v. motion, and this appeal ensued.

## II. The Breach of Contract Claim

■ Since an analysis of Grantham's proof of damages provides a linchpin for the examination of all of the issues presented for our review, we begin by considering the propriety of the district court's grant of j.n.o.v. in favor of ASP on Grantham's breach of contract claim. At trial Grantham sought to establish that it was damaged by ASP's breach because it lost the profits that would have been generated through operation of the Day territory which were precluded when ASP granted the distributorship to Day rather than to Grantham. Through the testimonies of Mr. Grantham and Dr. J. Carl Poindexter, a North Carolina State University economist, Grantham presented the jury with two calculations of damages.[1] Both calculations were premised on the notion that Grantham would have acquired the Day territory distributorship by matching the contract terms negotiated between Day and ASP.[2]

1. Grantham contends on appeal that the district court erroneously denied admission into evidence of Mr. Grantham's damages calculations made shortly after ASP's breach and reflected by exhibits 13 and 13A. Assuming *arguendo* that this was error, it was harmless. The information contained in these exhibits was placed before the jury by way of Dr. Poindexter's testimony regarding the damages allegedly suffered by Grantham as a result of ASP's breach. In addition, even without the exhibits as evidence, the jury awarded damages to Grantham in excess of the amount Mr. Grantham had calculated on the exhibits. Finally, admission of the exhibits would not have provided the factfinder with a basis for determining damages without engaging in speculation, for the same reasons Mr. Grantham's and Dr. Poindexter's testimonies were deficient to accomplish this result.

2. ASP contends that the jury had to speculate to conclude that Grantham would have exercised its right to become the Day territory distributor for $65,000, in light of the fact that Grantham had rejected an offer by ASP to become the distributor for a territory essentially the same as

the Day territory for $35,000 only a few months before ASP's breach. Mr. Grantham testified that the company did not reject ASP's $35,000 offer because of the price, but due to other objectionable terms in the earlier proposed contract. It is unclear if those objectionable provisions also appeared in the Day contract, the terms of which Grantham would have been obligated to accept if it had exercised its option to acquire the new territory. Nevertheless, after viewing the evidence in the light most favorable to Grantham, we believe that a rational factfinder could have credited Mr. Grantham's testimony and concluded that Grantham would have exercised its right to acquire the Day territory.

Similarly, ASP argues that Grantham failed to establish that it possessed, or could acquire, the financial wherewithal to purchase the Day territory even if it desired to do so. In our view, Grantham's evidence, particularly the testimony of Grantham's banker, Mr. Earey, provided a sufficient basis for a rational factfinder to conclude that Grantham would have been able to make the initial purchase of $65,000 worth of inventory necessary to acquire the Day territory.

Both calculations assumed that the results of operating the Day territory would be similar to the company's six-month experience in Grantham I & II and projected the profits expected from the Day territory by applying expense and profits data derived from the limited operation of Grantham I & II to the sale of $65,000 worth of product each quarter for a five year period of time. Mr. Grantham's calculations, reflected by exhibit 30, produced a claim for lost profits of $171,347, while Dr. Poindexter concluded that $281,317 had been lost by virtue of ASP's breach.[3]

The district court did not disturb the jury's finding that ASP had breached the contract with Grantham, but rejected Grantham's contention that it would have been able to sell $65,000 in product each quarter in the Day territory. Ultimately, the district court found that the only basis for concluding that Grantham could have sold all the inventory required under the Day contract was the purely speculative assertion of Grantham that it could have sold all the inventory it could acquire from ASP because Messrs. Grantham and Mann were good salesmen. Accordingly, the district court granted a j.n.o.v. to ASP, concluding that the "verdict for the plaintiff, if allowed to stand, would be a legally unjustified windfall to the plaintiff and a miscarriage of justice." For the reasons which follow, we agree.

■ Unquestionably, the district court, exercising diversity jurisdiction over a breach of contract claim involving a contract provision whereby the parties concurred that the agreement would be governed by Tennessee law, was required to apply the Volunteer state's law regarding proof of damages. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.

1188 (1938). Under Tennessee law, the purpose of awarding damages in breach of contract actions is to compensate for damages actually incurred by placing the plaintiff in the position he would have occupied had the contract been fulfilled in accordance with its terms, *Corporate Air Fleet v. Gates Learjet, Inc.*, 589 F.Supp. 1076, 1082 (M.D.Tenn.1984); *Marquette Cement Mfg. Co. v. Louisville & Nashville R.R.*, 281 F.Supp. 944, 947 (E.D.Tenn.1967), *aff'd*, 406 F.2d 731 (6th Cir.1969) (per curiam); *Action Ads, Inc. v. William B. Tanner Co.*, 592 S.W.2d 572, 575 (Tenn.Ct.App.1979), not to provide a windfall for the plaintiff. *See Great American Music Mach., Inc. v. Mid–South Record Pressing Co.*, 393 F.Supp. 877, 885 (M.D.Tenn.1975); *Action Ads*, 592 S.W.2d at 575. The plaintiff bears the burden of proving damages, *see Volasco Products Co. v. Lloyd A. Fry Roofing Co.*, 308 F.2d 383, 392 (6th Cir. 1962), *cert. denied*, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963); *Cecil Corley Motor Co. v. General Motors Corp.*, 380 F.Supp. 819, 854 (M.D.Tenn.1974), and without adequate proof, there can be no award of damages in any amount. *See Cecil Corley Motor Co.*, 380 F.Supp. at 858; *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn.Ct.App. 1982).

■ As a general rule, "damages are not permitted which are remote and speculative in nature." *Agricultural Services Ass'n v. Ferry–Morse Seed Co.*, 551 F.2d 1057, 1072 (6th Cir.1977); *see also Maple Manor Hotel, Inc. v. Metropolitan Gov't of Nashville & Davidson County*, 543 S.W.2d 593, 598–99 (Tenn.Ct.App.1975); *Anderson–Gregory Co. v. Lea*, 51 Tenn. App. 612, 619–20, 370 S.W.2d 934, 937 (1963). This rule serves to preclude recov-

---

**3.** The calculations produced different lost profits results because Mr. Grantham assumed that the average price markup on the fire extinguishers sold in the Day territory would be 63.3%, the same as had existed in the Grantham I & II territories over the six month period, while Dr. Poindexter utilized a markup of 77%, calculated by assuming that the product mix of fire extinguishers sold in the Day territory would represent the same product mix Grantham had experienced in the last two months of its operation in Grantham I & II when it was selling a small, popular unit with a high price markup. The calculations also differed because Mr. Grantham assumed that the expenses, exclusive of salaries, associated with Day territory sales would have been 27.8% of gross sales, as in Grantham I & II, while Dr. Poindexter's calculations merely annualized the expenses incurred during the six-month operation, added $50,000 in salary expense, and utilized this total as the expense figure for the Day territory.

ery, however, only where the fact of damage is uncertain, *i.e.*, where the damage claimed is not the certain result of the wrong, not where the amount of damage alone is uncertain. *Coverdell v. Mid-South Farm Equip. Ass'n,* 335 F.2d 9, 14 (6th Cir.1964); *Redbud Coop. Corp. v. Clayton,* 700 S.W.2d 551, 561 (Tenn.Ct. App.1985); *Cummins v. Brodie,* 667 S.W.2d 759, 765 (Tenn.Ct.App.1983); *Acuff v. Vinsant,* 59 Tenn.App. 727, 737, 443 S.W.2d 669, 674 (1969). Once the existence of damages has been shown, all that an award of damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages. *Lee Shops, Inc. v. Schatten–Cypress Co.,* 350 F.2d 12, 18 (6th Cir.1965), *cert. denied,* 382 U.S. 980, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966); *Coverdell,* 335 F.2d at 14; *Redbud Coop. Corp.,* 700 S.W.2d at 561; *Cummins,* 667 S.W.2d at 765.

■ Specifically, Tennessee law permits lost profits to be recovered following a breach of contract. *Booker v. Ralston Purina Co.,* 699 F.2d 334, 336 (6th Cir.1983); *Lee Shops,* 350 F.2d at 18; *Morristown Lincoln–Mercury Inc. v. Roy N. Lotspeich Publishing Co.,* 42 Tenn.App. 92, 103, 298 S.W.2d 788, 793 (1956). As with any other damages, however, the particular lost profits being claimed in any given case must not be remote, uncertain, or speculative by their very nature, *see, e.g., Clark v. Ferro Corp.,* 237 F.Supp. 230, 238–40 (E.D.Tenn. 1964); *American Bldgs. Co. v. DBH Attachments, Inc.,* 676 S.W.2d 558, 562–63 (Tenn.Ct.App.1984). Lost profits will be denied if it is uncertain that the defendant's breach caused the loss, *Lawler v. Zapletal,* 679 S.W.2d 950, 953 (Tenn.Ct. App.1984), or uncertain that the plaintiff would have made a profit in the absence of a breach. *See, e.g., Great American Music Mach.,* 393 F.Supp. at 885; *Morristown Lincoln–Mercury,* 42 Tenn.App. at 103, 298 S.W.2d at 793. Moreover, even if the existence of lost profits is established, recovery is properly denied if the plaintiff fails to provide "a sufficient basis for the jury's computation of the damage," *Bige-*

*low v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 266, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946), by "furnishing data from which the amount of the probable loss could be ascertained as a matter of reasonable inference," *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927), and "determined with reasonable certainty," *Volasco Products Co.,* 308 F.2d at 392. *Cecil Corley Motor Co.,* 380 F.Supp. at 854. A plaintiff clearly fails to prove the amount of lost profits with reasonably certainty by merely claiming that he could have sold a given number of products at a stated profit. *See Burge Ice Mach. Co. v. Strother,* 197 Tenn. 391, 406, 273 S.W.2d 479, 486 (1954); *Morristown Lincoln–Mercury,* 42 Tenn.App. at 103–06, 298 S.W.2d at 794–95.

In addition to applying Tennessee law regarding proof of damages, the district court sitting in this diversity case was bound to apply Tennessee's standard for granting a j.n.o.v. *See Pinkley v. Seaboard System R.R.,* 813 F.2d 787, 789 (6th Cir. 1987); *Rhea v. Massey–Ferguson, Inc.,* 767 F.2d 266, 269 (6th Cir.1985). Under Tennessee law, a trial court presented with a j.n.o.v. motion must

> take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion.

*Holmes v. Wilson,* 551 S.W.2d 682, 685 (Tenn.1977). Moreover, in reviewing the instant challenge to the district court's grant of j.n.o.v. in favor of ASP, we must apply the same standard. *Arms v. State Farm Fire & Casualty Co.,* 731 F.2d 1245, 1249 (6th Cir.1984); *Gootee v. Colt Indus.,* 712 F.2d 1057, 1062 (6th Cir.1983); *Holmes,* 551 S.W.2d at 685.

■ Applying the foregoing principles, we find that Grantham's proof of damages left uncertain whether ASP's breach of

contract resulted in any loss of profits to Grantham from the Day territory, and was clearly deficient in establishing the amount of damages with the reasonable certainty required under Tennessee law. The primary problem with Grantham's proof of damages is that it attempts to infer from the mere fact that Grantham had met its obligations under the existing contract covering territories I and II, that Grantham would have been able to comply with the terms applicable to the Day territory. Thus, Grantham asserts that it would have been able to sell $65,000 worth of product in the Day territory every three months because it had met its obligation on the original territories by purchasing and re-selling $56,000 worth of inventory during the six-month operation of Grantham I and II. The illogic and unreasonableness of this inference is patent. Adopting Grantham's reasoning, one would conclude that Grantham could have sold any amount of product in the Day territory that Day's contract had called for, even if that contract had required the purchase of enough product to supply a fire extinguisher to every man, woman and child in the territory every three months. While the "track record" of an existing business can undoubtedly supply a basis for lost profits if a defendant's breach of contract hinders the operation of a business, *see, e.g., Jennings v. Lamb*, 201 Tenn. 1, 7–8, 296 S.W.2d 828, 830–31 (1956); *Cummins*, 667 S.W.2d at 765–66; *Ford Motor Co. v. Taylor*, 60 Tenn.App. 271, 291–92, 446 S.W.2d 521, 530 (1969), there is no reason to assume, as a matter of course, that because a business is meeting current contract terms that it will necessarily be able to comply with different, and significantly more demanding, obligations.

Grantham should have utilized the particulars of its "track record" in Grantham I and II to demonstrate its ability to sell $65,000 worth of product every three months in the Day territory. The fact that it did not do so indicates that a more precise attempt on Grantham's part to project sales in the Day territory would have shown the unlikelihood of its selling such an amount. *See Cummins*, 667 S.W.2d at 766 ("If a party could produce better evidence than that which is introduced, the presumption is that the better evidence would be detrimental and would clarify deficiencies which the introduced evidence did not."). In fact, sufficient evidence exists in the record to convince us that better evidence would have acted to Grantham's detriment. Mr. Grantham's testimony indicated that he and Mr. Mann each had worked ten to twelve hours a day to sell the $56,000 worth of product in six months time in Grantham I and II. Yet the Day territory distributorship called for selling more than this amount, in half the time, in a territory with approximately one-half the population of Grantham I and II. Grantham, however, pointed to no demographic or marketing studies which indicated that the Day territory was an easier area in which to sell fire extinguishers, nor did it make a comparison of the Day territory with any other distributorship area in the country in an effort to demonstrate the likelihood of successfully selling $65,000 worth of the product each quarter. Finally, Grantham could not point to Day's success in the territory, since he remained a master distributor only 15 months, during which time he sold only $132,000 worth of fire extinguishers. In sum, Grantham completely failed to offer evidence affirmatively demonstrating that it could have successfully sold $65,000 in fire extinguishers in the Day territory every three months. The district court was left with nothing more than Mr. Grantham's self-serving assertion that Grantham would have been able to sell the amount called for in the Day contract because he and Mr. Mann were good salesmen. This is precisely the type of evidence which Tennessee courts have held to be insufficient to establish lost profits, *see, e.g., Burge Ice Mach. Co.*, 197 Tenn. at 406, 273 S.W.2d at 486; *Morristown Lincoln–Mercury*, 42 Tenn.App. at 103–06, 298 S.W.2d at 794–95, and is tantamount to no proof of lost profits at all.

Since the assumption that Grantham would have sold $65,000 worth each quarter forms the basis of both Mr. Grantham's and Dr. Poindexter's calculations of dam-

ages, failure to prove that this amount of sales was likely as a matter of reasonable inference renders Grantham's entire proof of lost profits deficient to establish damages with the reasonable certainty required under Tennessee law. More than that, however, Grantham's failure to prove that it could sell $65,000 worth of fire extinguishers each quarter in the Day territory makes it uncertain that Grantham suffered any damages as the result of ASP's breach of contract. Absent purchase from ASP (and subsequent sale) of $65,000 in product each quarter, Grantham would not have remained the master distributor of the Day territory entitled to a 60% discount on the price paid to ASP to acquire the inventory. As the financial data from Grantham's first six months of operation clearly shows, the resultant increase in the cost of goods sold would have wiped out any profits from sales in the Day territory. Thus, Grantham's proof did not even rule out the possibility that it was benefitted, rather than damaged, by being precluded from entering the Day territory under a contract requiring inventory purchases of $65,000 every three months.[4]

Based on the foregoing,[5] we find that Grantham's proof of lost profits necessar-

ily rendered an award of damages, in any amount, a product of speculation, and clearly failed to establish an amount of damages with the reasonable certainty required by Tennessee law. Our conclusion is buttressed by the fact that Grantham could not even decide on the proper measure of damages, but submitted for the jury's cogitation two calculations of damages, premised on different assumptions concerning the appropriate product mix[6] and expenses allocable to the Day territory, that differed in the total amount of damages alleged by almost $110,000. Finally, the jury award itself evidences that it was a product of speculation. Although Mr. Grantham calculated damages totalling $171,347 and Dr. Poindexter computed $281,317, the jury inexplicably awarded $350,000 in damages, a figure which bears no discernable relationship to the evidence before it. Accordingly, the district court's grant of j.n.o.v. to ASP on Grantham's breach of contract claim was not error, and is affirmed.[7]

### III. The RICO Claim

Grantham's complaint alleged that one telephone call involving defendant Hunneke concerning the "Wood incident," two

4. Our finding that Grantham failed to prove that he could have sold $65,000 worth of fire extinguishers in any quarter of operation in the Day territory renders superfluous a discussion of ASP's contention that even if Grantham had been initially successful in the territory, it would not have remained the Day territory distributor for five years.

5. Grantham's proofs also appear deficient in explaining the amounts of operating expenses attributed to the prospective operation of the Day territory. Neither Mr. Grantham's nor Dr. Poindexter's calculations break down the total operating expense into fixed and variable components to show precisely how this operating expense would be affected by incursion into the new territory. Consequently, it is impossible to tell if the operating expense would have maintained the same ratio to gross revenues in the Day territory as had existed in Grantham I and II, as Mr. Grantham's calculation assumes, or would have been the same amount as that incurred in the old territory despite the greater sales volume in the Day territory, as Dr. Poindexter's annualized operating expense figure assumes. However, given that mathematical precision is not a requirement in establishing damages, even lost profits, and that Grantham's

proof of gross sales in the Day territory was speculative, we decline to rely on this particular failing.

6. Dr. Poindexter's calculations appear speculative by virtue of assuming that the same product mix which had existed for only the last two months of Grantham's operation of territories I and II would represent the product mix in the Day territory for a five year period of time. See supra note 3. However, because Grantham's assumption regarding gross sales expected in the Day territory alone rendered the jury's award a product of speculation, we need not, and do not, decide if Dr. Poindexter's weighted average for determining the price markup in the Day territory was inappropriate.

7. Given our finding that Grantham's proof was deficient to establish damages in any amount, we need not address ASP's contention that any alleged damages from ASP's breach was mitigated when Messrs. Grantham and Mann returned to jobs paying more than they could have expected from selling fire extinguishers in the Day territory.

phone calls and one letter connected with the "Surber incident," and the two letters from ASP involved in the "Day incident" constituted acts of mail and wire fraud for which ASP was liable under RICO. In dismissing Grantham's action against Hunneke prior to trial, the district court found that the four acts relating to the Wood and Surber incidents resulted in no injury to Grantham. Following the presentation of Grantham's proof, the district court found the remaining two alleged acts of mail fraud, the October letters connected to the "Day incident," insufficient to constitute predicate acts necessary for a violation of the RICO Act. Accordingly, the district court granted ASP's motion for a directed verdict in favor of the remaining defendants on the RICO claim.

On appeal, Grantham does not assign error to the district court's dismissal of Hunneke as a defendant or its finding that the correspondence surrounding the Wood and Surber incidents did not result in injury to Grantham. Instead, Grantham contends that the district court's directing out of its RICO claim was error because the two October mailings, alone or in conjunction with the phone calls and letter surrounding the Surber incident which Grantham claims were erroneously excluded from evidence,[8] satisfied the predicate acts requirement of RICO. In addition, Grantham claims that corporate defendant ASP could be held liable based on the doctrine of *respondeat superior*, and that any defense provided by the defendants' assertion of a "good faith" belief that the mailings were all that was required to give Grantham notice to exercise its right of first refusal was a matter properly left for a jury to assess. We believe it is unnecessary for us to address any of these contentions which Grantham raises on appeal. In our view, Grantham's pleadings and proof at trial clearly demon-strate that the plaintiff was not entitled to recover under RICO.

Section 1964(c) of RICO, the provision upon which Grantham's claim is founded, provides for a private cause of action:

> Any person *injured* in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c)(1982) (emphasis added). Section 1962(c), the specific prohibition upon which Grantham relies, makes it illegal for anyone employed by or associated with an enterprise engaged in interstate commerce to participate "in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c)(1982). "Racketeering activity" is defined in section 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341 (1982), and wire fraud, 18 U.S.C. § 1343 (1982). A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten year period, 18 U.S.C. 1961(5) (1982), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim.

■ Assuming *arguendo* that ASP was engaged in an enterprise affecting interstate commerce conducted through a pattern of mail and/or wire fraud violative of section 1962(c), Grantham's own evidence shows that no reasonable factfinder could have found that Grantham was entitled to recovery under section 1964(c). First, Grantham's proof failed to establish that it had been injured to any degree by any conduct on the part of ASP. The injury alleged by Grantham under the RICO claim

---

**8.** The district court refused to permit Surber to testify concerning his dealings with Hunneke in August, 1982, finding that the testimony would be irrelevant since Hunneke had been dismissed as a defendant. The court also declined to admit into evidence a post-complaint, pre-trial mailing from ASP to Grantham in March, 1983 containing newspaper clippings decrying frivolous lawsuits. Grantham contends on appeal that Surber's testimony and the March, 1983 mailing were relevant and probative of the defendants' intent to defraud Grantham in a manner violative of the RICO Act. Our resolution of Grantham's contention that the district court erred in its directed verdict on the RICO claim demonstrates that these evidentiary rulings, if erroneous, were harmless.

was the loss in profits which Grantham would have derived from the Day territory absent ASP's fraud, precisely the same injury alleged in Grantham's breach of contract claim. As we determined above, however, although Grantham clearly had the opportunity and the motivation to prove that it had been damaged as a result of ASP's breach, the plaintiff simply failed to prove that it had suffered injury, in the form of lost profits or otherwise, as a result of being deprived expansion into the Day territory. Indeed, Grantham's proof did not preclude the possibility that it was benefitted by being denied the new territory and provided with the impetus to leave a business likely headed south. This failure to establish injury in the context of the breach of contract claim likewise precludes finding a RICO injury compensable under section 1964(c). *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985) (A RICO plaintiff can recover only to the extent that "he has been injured in his business or property by the conduct constituting the violation."); *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

■ In addition, even if Grantham had established lost profits as a result of ASP's conduct, it would have still been unable to recover under RICO because that injury would not have been "by reason of" ASP's fraud. This language of the private civil RICO remedy imposes a causation requirement on plaintiffs:

> The criminal conduct in violation of section 1962 must, directly or indirectly, have injured the plaintiff's business or property. A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured.

*Haroco Inc.* 747 F.2d at 398; *see also Sedima*, 105 S.Ct. at 3285–86 (quoting *Haroco* favorably); 18 U.S.C. § 1964(c)(1982). Grantham, however, suffered no loss by

reason of the correspondence connected with the Wood or Surber incidents, and does not contest on appeal the district court's finding to this effect. As for the Day incident correspondence, Grantham's pleadings and proof at trial demonstrate that it was in no way deceived by ASP's October mailings and in no way relied on those letters to its detriment. *Cf. Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984) (RICO plaintiffs' failure to allege what misrepresentation of material fact they reasonably relied on to their detriment rendered the complaint defective under Fed.R.Civ.P. 9(b)). Following receipt of the October 8 letter, Grantham immediately responded with a letter of its own reminding ASP of its right of first refusal, and requesting the name of the party and copies of correspondence between ASP and the bidder after ASP received a "firm bid" for the new territory. This clearly shows that Grantham, far from being deceived by ASP into failing to exercise its right of first refusal, never accepted the October 8 letter as the notification called for in its contract with ASP. The October 19 letter, received by Grantham on October 27 after ASP had already breached its contract with Grantham by granting the distributorship to Day, could not have induced Grantham to forego expansion into the new territory. Clearly, any injury which Grantham allegedly suffered could not have resulted from misrepresentations or omissions of material fact in ASP's correspondence on which Grantham did not rely. Assuming, therefore, that Grantham was injured in its business by ASP's conduct, it was injured by virtue of being denied the distributorship of the Day territory, an effect proximately caused solely by ASP's breach of its contract with Grantham. Accordingly, since Grantham failed to establish either the injury or the causation necessary for a § 1964(c) RICO claim, the district court's directed verdict must stand.

## IV. The State Statutory Claims [9]

The district court, noting that the contract between Grantham and ASP stated

---

**9.** We address the issues regarding Grantham's state statutory claims despite ASP's assertion

that Grantham's notice of appeal, by designating the appeal as being only from the district court's

that the law of the State of Tennessee would govern the rights of the parties, granted ASP's summary judgment motion and dismissed Grantham's claim alleging that ASP violated the N.C. Act. Then, after Grantham amended its complaint to assert a cause under the TCPA, the court dismissed that claim upon finding that the private right of action of the TCPA, as interpreted by the Tennessee courts, permits suits seeking damages to be brought by consumers only and not by corporations. *See* Tenn. Code Ann. § 47–18–109(a) (1984). Grantham contends on appeal that an action alleging unfair trade practices sounds in tort, not contract, so that the choice of law provision in the distributorship agreement was inapplicable in ascertaining whether North Carolina or Tennessee law applied in this diversity case. According to Grantham, if the district court, as the transferee court under 28 U.S.C. § 1406(a) bound to apply the choice of law applicable to the forum state in which it sits, had applied Tennessee's choice of law rule for tort actions, the court would have concluded that North Carolina law applied since it was in that state that the wrong to Grantham occurred. Alternatively, Grantham contends that if the TCPA governs his unfair trade practice claim, the trial court erred in concluding that it was bound by Tennessee Court of Appeals cases with which it disagreed. Instead, argues Grant-

ham, the district court should have concluded that the Tennessee Supreme Court, if presented with the issue, would hold that the TCPA permits private damage suits by corporations as well as natural persons.

 We find it unnecessary to determine which state statute was appropriate for the resolution of Grantham's unfair trade practice/consumer protection claim. Even if the district court should have found the N.C. Act controlling, the error was harmless because Grantham would not have been able to prove the injury necessary for recovery under that statute. If Tennessee law was applicable, we believe that the district court was correct in accepting the Tennessee appellate courts' interpretation of the TCPA in finding that Grantham was not a proper party to initiate an action seeking damages under that statute. In other words, Grantham's allegation of error in the district court's treatment of the statutory claims is caught on the horns of a dilemma, mandating our conclusion that both claims were properly dismissed before trial, for the reasons which follow.

The N.C. Act makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.Gen. Stat. § 75–1.1(a) (1985). Section 75–16 provides for a private cause of action if "the

directed verdict in favor of ASP on the RICO claim and the court's grant of j.n.o.v. to ASP on the breach of contract claim, failed to preserve for appeal any issues involving the district court's treatment of Grantham's N.C. Act or TCPA claims. Although ASP correctly notes that this court has held that "[i]f an appellant ... chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specific issues may be raised on appeal," *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir.1985) (citing *Drayton v. Jiffee Chem. Corp.*, 591 F.2d 352, 361 n. 10 (6th Cir.1978)), "the law is well settled that an appeal from a final judgment draws into question all prior non-final rulings and orders." *Id.* at 101 (citing cases). Moreover, we are mindful that "[i]n considering the impact of technical errors upon the sufficiency of a notice of appeal, the Supreme Court has repeatedly emphasized that absent a showing of prejudice such errors are to be treated as harmless." *Id.* at 102 (citing cases).

In the instant case, Grantham's notice of appeal did not designate the subjects of the appeal nearly as specifically as did the plaintiff in *Drayton*. Instead, Grantham merely appealed from the final order of the district court and the district court's directed verdict. If Grantham had appealed only from the j.n.o.v., this would have drawn into the appeal both the directed verdict and the district court's summary judgments in favor of ASP disposing of Grantham's state statutory claims. In addition, ASP has failed to show that it would suffer prejudice if Grantham's appeal is viewed as an appeal which preserved the issues pertaining to the trial court's dismissal of the N.C. Act and TCPA claims. In this circumstance, we believe it best to treat the designation of the directed verdict claim in the notice of appeal as mere surplusage which does not circumscribe the scope of the appeal from the j.n.o.v.

business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm, or corporation in violation of the provision of this Chapter," N.C. Gen.Stat. § 75–16 (1985), and mandates that the judgment treble the amount of damages assessed and fixed by the verdict finding a violation of the statute.[10] *Id.* An essential element of a plaintiff's cause of action under this statute, however, is proof that the plaintiff suffered actual injury as a result of the defendant's unfair or deceptive conduct. *Ellis v. Smith–Broadhurst, Inc.,* 48 N.C.App. 180, 184, 268 S.E.2d 271, 273–74 (1980); *Mayton v. Hiatt's Used Cars, Inc.,* 45 N.C.App. 206, 212, 262 S.E.2d 860, 864, *review denied,* 300 N.C. 198, 269 S.E.2d 624 (1980). Grantham's failure to establish the existence of any damage in connection with its breach of contract claim, however, leads inexorably to the conclusion that Grantham would have failed in its proof of actual injury requisite for recovery under the N.C. Act, even if this latter claim had not been dismissed by the trial court.[11] Accordingly, assuming error by the district court in failing to apply the N.C. Act in this case, the error was harmless. *See* 28 U.S.C. § 211 (1982); Fed.R.Civ.P. 61.

■■■ If Tennessee law applied to resolving Grantham's statutory claim against ASP, we believe the district court correctly disposed of the corporation's claim by adopting the ruling of the Tennessee appellate courts that the private action provision of the TCPA permits suits seeking damages to be brought only by consumers, defined by the statute as "natural person[s]." Tenn. Code Ann. § 47–18–103(1)(1984). In diversity cases, the federal courts must apply state law " 'in accordance with the then controlling decision of the highest state court.' " *United States v. Anderson County, Tennessee,* 761 F.2d 1169, 1173 (6th Cir.) (quoting *Vandenbark v. Owens–Illinois Glass Co.,* 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941)), *cert. denied,* 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985); *see Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the "majority" rule, what the state's highest court would decide if faced with the issue. *See Bailey v. V & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985) (citing cases); *Mathis v. Eli Lilly & Co.,* 719 F.2d 134, 141 n. 15 (6th Cir.1983) (quoting *Clutter v. Johns–Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir.1981)). Nevertheless, although a decision by a lower state court is not controlling where the highest state court has not spoken, *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *see Bailey,* 770 F.2d at 604, the decision of " 'an intermediate appellate state court . . . is a datum for ascertaining

---

**10.** Section 75–16 provides in full:

> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

N.C.Gen.Stat. § 75–16 (1985).

**11.** Even if Grantham had demonstrated a technical violation of the N.C.Act, it would not have recovered punitive damages or attorney's fees. Since the trebling provision of § 76–16 is itself punitive in nature, punitive damages are not allowed for a violation of the N.C.Act. *See Hardy v. Toler,* 288 N.C. 303, 312, 218 S.E.2d 342, 348 (1975) (Huskins, J., concurring); *Pinehurst, Inc. v. O'Leary Brothers Realty, Inc.,* 79 N.C.App. 51, 60–64, 338 S.E.2d 918, 924–25, *review denied,* 316 N.C. 378, 342 S.E.2d 896–97 (1986). Attorney's fees may be awarded to a "prevailing party" upon a finding that the defendant's violation was willful and the violator was unwarranted in refusing to settle the case. N.C.Gen.Stat. § 75–16.1 (1985). A plaintiff will qualify as a "prevailing party," however, only upon successfully showing that he suffered actual injury; proof of a mere technical violation of the N.C.Act is not sufficient to warrant an award of attorney's fees. *Mayton,* 45 N.C.App. at 212; 262 S.E.2d at 864.

state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.*' " *Estate of Bosch,* 387 U.S. at 465, 87 S.Ct. at 1782 (quoting *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)) (emphasis supplied by *Bosch*); *see also Woodruff v. Tomlin,* 616 F.2d 924, 928–29 (6th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980).

In the instant case, both parties acknowledge that the Tennessee Supreme Court has not yet spoken on whether the TCPA affords a private right of action to corporations or to individual consumers only. The Tennessee Court of Appeals has decided the issue, however. In *American Bldgs. Co. v. White,* 640 S.W.2d 569 (Tenn.Ct.App. 1982), the intermediate court expressly held that the TCPA's private right of action to recover damages,[12] including provisions for recovering treble damages [13] and attorney's fees,[14] applies only to consumers, *i.e.,* natural persons, not to corporations. *Id.* at 575.[15] Nevertheless, Grantham argues that the express language of the TCPA affords corporations a private right of action by virtue of giving the private right to any "person," *see* Tenn. Code Ann. § 47–18–109(a)(1), and defining "person" to include corporations. *See* Tenn. Code Ann. § 47–18–103(6). Grantham also relies on that language of *Haverlah v. Memphis Aviation, Inc.,* 674 S.W.2d 297 (Tenn.Ct.

App.1984), which states that "[t]he Act is to be liberally construed to protect consumers *and others* from those who engage in deceptive act [sic] or practices," *id.* at 305 (emphasis added), and the pronouncement in *Akers v. Bonifasi,* 629 F.Supp. 1212 (M.D.Tenn.1984), that the policy of the TCPA is "to protect legitimate business-enterprises ... and provide for civil means of maintaining ethical standards of dealing between persons engaged in business." *Id.* at 1223.

In our view, Grantham's arguments do not provide data sufficiently persuasive to conclude that the Tennessee Supreme Court would have decided the issue differently than the appellate court in *White.* The express language of the TCPA's private right provision is not without ambiguity. Although seeming to afford the right to any person, including corporations, the provision concludes by stating that the action can be brought "individually, but not in a representative capacity, to recover actual damages." Tenn. Code Ann. § 47–18–109(a)(1)(1984). Moreover, the provision denominating those factors to be considered in awarding treble damages lists, *inter alia,* "(A) The competence of the *consumer;* (B) The nature of the deception or coercion practiced upon the *consumer;* [and] (C) The damage to the *consumer.*" Tenn. Code Ann. § 47–18–109(a)(4)(1982) (emphasis added). Finally, we see nothing in the *Haverlah* and *Akers* cases which

---

**12.** Section 47–18–109(a)(1) states in full:

Any person who suffers an ascertainable loss of money or property, real, personal or mixed or any other article, commodity or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part may bring an action individually, but not in a representative capacity, to recover actual damages.

Tenn.Code Ann. § 47–18–109(a)(1) (1984).

**13.** "If the court finds that the use or employment of the unfair or deceptive practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper." Tenn.Code Ann. § 47–18–109(a)(3) (1984).

**14.** "Upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs." Tenn.Code Ann. § 47–18–109(e)(1) (1984).

**15.** This holding of the western section of the Tennessee Court of Appeals followed, and relied on, a similar holding of the eastern section of the state court in *Colyer v. Trews* (Tenn.Ct.App. Feb. 12, 1982) (*LEXIS,* States library, Tenn file), an unreported decision. The *Colyer* court concluded that corporate plaintiffs cannot maintain an action for damages under Tenn.Code Ann. § 47–18–109(a), but are not similarly precluded from bringing actions for declaratory and injunctive relief under Tenn.Code Ann. § 47–18–109(b).

conflicts with the holding in *White*. The pronouncements in those cases that the TCPA is to be liberally construed to protect consumers and others only acknowledge the purpose of the statute to protect "consumers and legitimate business enterprises" against deceptive trade practices. *See* Tenn. Code Ann. § 47–18–102(2)(1984). Denying corporations or other entities apart from consumers a private cause of action to recover damages under the statute is not inconsistent with the desired ends of the legislation, which may be effectuated by investigations and judicial actions brought by the division of consumer affairs of the Tennessee department of agriculture, see Tenn.Code Ann. §§ 47–18–106 through 47–18–108 (1982), and by corporate suits seeking declaratory and injunctive relief.[16]

In the absence of persuasive data that convinces us that the Tennessee Supreme Court would have found that the TCPA affords a private right of action to recover damages to corporations Grantham's, we cannot find that the district court erred in concluding that Tennessee law limits private damage suits under the TCPA to actions brought by consumers. Therefore, regardless of which state statute was appropriate to resolve Grantham's claim of unfair trade practice/consumer protection, the district court's summary judgments in favor of ASP, dismissing both the N.C. Act and TCPA claims, must be sustained.

In light of the foregoing, the judgment and orders of the district court are AFFIRMED.

**Editor's Note:** The opinion of the United States Court of Appeals, Sixth Circuit, in *Sundberg v. Mansour,* published in the advance sheet at this citation, 831 F.2d 610–627, was withdrawn from bound volume because rehearing en banc was granted and opinion vacated.

---

**16.** *See supra* note 15.