AMERICAN BUILDINGS COMPANY,
Plaintiff and
Counter-Defendant-Appellant,

v.

Eddie WHITE d/b/a White Construction
Company, Defendant,

and

DBH ATTACHMENTS, INC., DBH, Inc.,
and Dean Hunt, Defendants, Counter-
Plaintiffs, and Third-Party Plaintiffs-
Appellees,

v.

John W. NORTON, Third-Party
Defendant-Appellant,

and

White Construction Co., Inc.,
Third-Party Defendant.

Court of Appeals of Tennessee,
Western Section.

May 14, 1982.

Rehearing Denied June 15, 1982.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 4, 1982.

570

Louis F. Allen and Louis Jay Miller, Memphis, for American Buildings Co. and John W. Norton.

Joe Hailey, Selmer, for Eddie White.

W.J. Reynolds and Robert V. Redding, Selmer, for DBH Attachments, Inc., DBH, Inc., and Dean Hunt.

NEARN, Judge.

DBH Attachments, Inc., hereinafter called DBH, contracted with White Construction Company, Inc., for the sum of $19,000.00 for the erection of a metal roof structure on a concrete block building being built by DBH. White procurred the metal roof structure from American Building Company (ABC), a specialist in prefabricated metal structures, and installed same

upon the DBH building. The roof was not satisfactory to DBH and it refused to pay White the amount due under their contract. White was unable to pay ABC for the material and as a consequence, ABC filed suit in the Chancery Court of McNairy County against White for the cost of the roof structure and against DBH to enforce an alleged furnisher's lien. DBH then counterclaimed against ABC, joining as a defendant the engineer for ABC, John W. Norton, and cross filed against White for alleged damages resulting from the defective roof structure.

The Chancellor awarded judgment for DBH in the amount of $239,304.53 against White singularly. Of that amount $233,-412.67 was also adjudged against White, ABC and Norton as a joint judgment. The Chancellor further decreed that ABC be indemnified by White for any amount it paid to DBH on the joint judgment.

All parties except White have appealed.

The foregoing simple statement of events belies the complexity of the issues raised by this appeal. We deem it best to consider the legal problems of each of the parties separately, because the separate or special relationships have created separate or special problems. Further, we believe that an examination and exploration of the relationship and status of White, the party that has not appealed, will facilitate an understanding of the matter.

## THE MATTER OF EDDIE WHITE d/b/a WHITE CONSTRUCTION COMPANY.

The Trial Judge initially rendered judgment against Eddie White personally. However, based upon a post judgment motion the Trial Judge altered the judgment so that it would be against White Construction Company, Inc., and not against White individually. This action of the Trial Judge is the subject of complaint by appellants ABC and Norton. At the outset we state we find no error in the action of the Trial Judge. The proof shows that all parties were aware of the corporate identity of the White Construction Company and all knowingly dealt with Eddie White in a corporate capacity. Therefore, we affirm the post judgment action of the Trial Judge in naming the proper defendant in the judgment.

DBH is the manufacturer of unique labor saving attachment for commercial type sewing machines used by the garment industry. Dean Hunt formed the company in 1974 and because of the utility of its products met with phenomenal success. Accordingly, in 1976 the company needed to expand its manufacturing facilities. For expansion purposes, the company in 1976 purchased real estate near its original facility. Dean Hunt drew up the rough plans for a new building to be placed on the newly acquired land. The structure had a slab foundation and concrete block walls. Hunt contracted out various parts of the concrete block work and acted as general coordinator and supervisor of the project. While the building was under construction, Hunt was contacted by a salesman for White regarding the roof of the building and what is called in the record a metal "standing seam" roof was discussed. Hunt contracted with White for the erection of such a roof. The roof in question is not simply metal sheets laid over an existing wooden or some other type of decking already supported, but consists of the sheet metal roof as well as the truss support system. It was understood that White was to order the prefabricated roof from another and White was to erect it. White agreed to furnish and erect the agreed upon roof for the sum of $19,-000.00. In so far as the claim between DBH and White is concerned, suffice it to say that the facts show the roof was improperly and poorly installed. Further, it was necessary for DBH to remove the sheet metal roofing material, add additional supports, repair wall damage and install new roofing.

Since there is privity between DBH and White as evidenced by their contractual relationship, it is evident that White is liable to DBH for breach of contract and for the damages that normally would flow from that breach. Further, whether the contract was breached through "negligence," or not is immaterial. The action between DBH

and White is for breach of contract. DBH sought damages from White for the repair of the roof, damage to the concrete block walls of the building, and economic loss represented by loss of profits. We are of the opinion that if properly proven, DBH would be entitled to all the foregoing items of damage against White.

## THE CLAIM OF DBH AGAINST ABC.

The claim of DBH against ABC is based upon theories of negligent design, breach of express and implied warranties, strict liability, negligent or willful misrepresentation, and violation of the Tennessee Consumer Protection Act. The Chancellor's Trial Opinion states that he found in favor of DBH on all of the theories except the Consumer Protection Act. DBH has appealed the Chancellor's ruling as to the Act and seeks the treble damages and attorney's fees therein provided. ABC and Norton have appealed all theories of liability against them as well as the measure of damages applied.

The Chancellor found and we agree that the evidence establishes that the roof failed to meet the obligations of both White and ABC. The roof, as erected on DBH's building, was unstable and its movement cracked the masonry walls. The record reveals that the cause of this instability was a poor erection job and, as well, the roof system was designed with inadequate strength to support the loads made necessary by the masonry walls of the building. Testimony in the record indicates that the roof system was designed with deficiencies in either the bracing provided, the diaphragm capacity, or the types of bolts and holes used, or a combination of these.

ABC took the position at trial that even if the design was inadequate for the building, they have no liability for this failure because the roof system was designed according to an order form filled out by White and ABC was required to do no more

than fill the order that White submitted. In that order form White specified the load limits as 12 and 15 pounds for the structure to be fabricated and gave no further information other than the style of roof desired and the width and length of the building.[1] ABC has insisted that it is not its duty to check and see if a dealer actually wants what it has ordered or whether the dealer's order follows the wishes of the owner or meets the contract requirements between owner and dealer.

■ We find, as did the Chancellor, that ABC, through its promotional literature, made direct representations about their design responsibilities to the purchaser DBH and that White acted as an agent of ABC for the purpose of forwarding design information, which representations were relied upon by DBH. We further find that ABC failed to meet its obligations under those representations to DBH and such failure constitutes tortious misrepresentation as recognized in *Ford Motor Co. v. Lonon,* (1966) 217 Tenn. 400, 398 S.W.2d 240.

Dean Hunt of DBH testified that in choosing to order the ABC roofing system he relied upon ABC brochures furnished by White that described ABC products and processes. The back pages of the brochures had a space saying "Your American Builder is" and stamped in that space on some of the brochures was "Eddie White Const. Co., Inc.," with an address. The brochures contained the following language:

It's very likely that the American Builder in your area has already built a building that would be just right for you. But even if he hasn't, it will pose little or no problem for him. He'll work with you from foundation to completion and assure you complete satisfaction. That's his business . . . and he does a good job at it. American's structural systems are a combination of computerized, pre-designed

---

1. The term "load limits" does not refer only to the maximum load that may be placed on top of the roof structure before it fails, but also refers to wind load, including the load placed on the structure caused by winds striking the exterior walls of the building as the roof structure should be fabricated to support the exterior walls of the building as well as protecting its interior from the elements. In short, the roof structure in this instance is contemplated to be an integral support part of the entire building.

components. When your building requirements are determined, the structural components for your building are processed through American's modern manufacturing facilities under constantly controlled factory conditions.

It is through this method that American, and your nearby American Builder, can provide a variety of systems to achieve your desired building width, length, and eave heights.

By utilizing these systems, the American Builder is professionally equipped to fulfill your building needs quickly and economically to your complete satisfaction. Although one of the hundreds of standard designs in this brochure may be just right for your need . . . *you aren't limited to only a standard building.*

*Everyday, special-design buildings represent a larger percentage of our sales. This is largely because we set a precedent in our industry when we went to computer-aided design and computer drawings. What it used to take us weeks to do in designing and drawing, is now done in just hours.*

*With our engineering and manufacturing know-how, plus our computer-aided design and drawing capabilities . . .* the American Builder in your area can serve you faster, more accurately and to your full satisfaction.

(emphasis added).

The agreement between DBH and White was that ABC would provide plans not only for the erection of the roof system they would design, but also for the installation of anchor bolts in the masonry walls, which installation would be done by DBH. Although White may not have had authority to bind ABC to a contract to provide these instructions and designs, ABC did in fact provide the instructions as the first page of a set of plans for the roofing system. The first two pages of the plans were drawn specifically for the DBH building and designated as such. In short, ABC represented that they designed roofing systems for an individual's needs and in this case did in fact provide a roofing system that appeared to be designed for DBH's needs.

■ ABC knew that Eddie White was not a design engineer. ABC never warned its customers that before ordering through "Your American Builder," a customer should have an engineer design the specifications sent. To the contrary, ABC's literature gives the impression that costs are saved by relying upon ABC's design services and "Your American Builder." The ABC brochures depicted ABC roofs installed on masonry walls, however Eddie White had never before ordered or installed an ABC roof system on masonry walls. DBH never saw the order form with ordering instructions that was filled out by White and sent by White to ABC. DBH relied upon ABC's representations and White's execution of the order to purchase the appropriate roof system. White had apparent authority from ABC to provide all information needed by ABC to design a satisfactory roof system for DBH. ABC, through its brochures, gave White this apparent authority. White was, therefore, an agent of ABC to the extent that ABC used White to provide information necessary to fulfill ABC's obligation to design a satisfactory roof for DBH's building, as represented to DBH in ABC's brochures. White testified that he designated 12 and 15 pound load limits because that is what he had previously used as the limits for roof structures on all metal buildings. (He had no experience with a masonry building.) Even ABC's expert witness testified that in computing the load limits for a roof structure for the DBH building it was absolutely necessary to consider the height of the masonry walls and in fact, no satisfactory roof structure for the building could be fabricated without taking such into consideration. White did not consider wall heights but relied upon his past experience with metal buildings in establishing the load limits.

There is expert testimony in the record that the roof structure fabricated by ABC, even if properly installed, would not adequately support the masonry walls of the building. Without dispute, the record shows that the masonry walls were cracked

and damaged after the installation. We find that the evidence does not preponderate against the Chancellor's finding that damage was sustained by the plaintiff through the misrepresentation of ABC.

## DAMAGES—ISSUES RAISED BY ABC.

According to *Ford Motor Co. v. Taylor,* (1969) 60 Tenn.App. 271, 446 S.W.2d 521, damages recoverable for tortious misrepresentation include economic loss (including lost profits), as well as property damage. The Chancellor found ABC liable for the following sums:

| | |
|---|---|
| Cost of repair and replacement of roof | $ 43,005.63 |
| Lost profits | 180,927.04 |
| Lost profits from machine not produced | 6,000.00 |
| Loss of rental income | 3,480.00 |
| | $233,412.67 |

ABC has objected on appeal to each element of the damages. As to the award of $43,005.63 for property damage and repair of the roof itself, we find that the proper measure of damages was applied and the evidence does not preponderate against that amount. However, we do not find that the proof establishes the remaining sums as reasonable calculations of lost profits.

The Chancellor awarded DBH $180,927.04 in lost profits using the following calculation:

| | | |
|---|---|---|
| (a) | Net profits for first year after occupancy | $351,856.52 |
| (b) | Monthly net profit (a) ÷ 12 | 29,321.38 |
| (c) | Monthly net profit for 4 months immediately preceeding occupancy | 6,705.50 |
| (d) | Difference between (b) and (c) | 22,615.88 |
| (e) | Net profit loss, (d) × 8 months (delay in occupancy attributed to appellants) | $180,927.04 |

■ We find that this calculation of lost profits is too indefinite and speculative to represent proven actual damages to DBH. DBH required the new building for two principal reasons. First, additional space was thought to permit certain cost of production savings—more efficient machinery, purchase of supplies in greater quantities, etc. Second, DBH had a significant backlog in orders and the new space would allow greater production capacity in order to fill the unsatisfied demand. The calculations above and the proof presented by DBH do not indicate what amount of the $351,856.52 in profits earned in the first year of occupancy represents satisfaction of a backlog in orders that would not continue to appear in DBH's profits after that first year. In other words, the proof indicates that some amount of the "profit loss" may not have been "lost" at all, but may have been only delayed in realization.

Dean Hunt of DBH did testify, and it is of course logical, that when orders cannot be filled, some customers will forego a product or go elsewhere to obtain it. But that truism does not support the conclusion that based on this record DBH actually did lose $180,927.04 in profits. Dean Hunt also testified that the only sales actually lost were one contract for a new machine, two other firm orders and sixteen tentative orders.

DBH relies upon the case of *Ferrell v. Elrod,* (1971) 63 Tenn.App. 129, 469 S.W.2d 678, for the proposition that a new business may recover lost profits based upon profits earned when the business actually does open. But, we do not have here a new business that was totally incapable of operations or existence because of the defendant's conduct. As Mrs. Ferrell's beauty shop customers could not patronize her business before it existed, there was little doubt that the projected profits were actually lost. Nor do we have a going concern seeking recovery on the basis of proven *past* profits lost due to business interruption, as in *Summers & Lewis v. Sanderson,* (1928) 7 Tenn.App. (M.S.) 624. In *Ferrell* and *Sanderson,* a monthly profit figure could be used to compute lost profits because when a business cannot operate at all it is inferable that profits are lost. Neither of these cases provides a useful precedent for calculating damages in this situation, which involves a delayed expansion, not a total incapacity.

DBH is entitled to recover lost profits that are the result of proven actual lost revenues and proven higher costs resulting from the inability to occupy their new facility. Because an improper method was used to calculate lost profits from the evidence

presented, the case will be remanded for determination of the actual profit losses appearing in the record.

DAMAGES—ISSUES RAISED BY DBH.

■ DBH contends that the damages awarded it are insufficient for several reasons. First, DBH argues that the Chancellor erred in finding inapplicable the Tennessee Consumer Protection Act of 1977, T.C.A. § 47–18–101 et seq., and thereby denying DBH the treble damages and attorney fees therein provided. We agree with the Chancellor and find, along with the Eastern Section of this Court, that the remedy provided in section 47–18–109(a) was intended by the legislature to be available only to "consumers." *Colyer vs. Trew,* (Tenn.App.E.S., filed February 12, 1982). "Consumer," for purposes of the Act, does not include corporations. T.C.A. § 47–18–103(a). Therefore, DBH may not recover under the Act actual or treble damages or attorney fees associated with such damages.

DBH also contends that the Chancellor erred in allowing lost profits for only eight months, rather than the fourteen months alleged by DBH. Because we have determined that the entire lost profits calculation must be remanded for other reasons, this issue is pretermitted on this appeal.

DBH next contends that the Chancellor erred in deducting $20,000.00 from the amount DBH spent on repairs and replacement of the roof to offset the difference in value between the metal roof purchased from ABC and the tar built-up roof finally installed. We find that the deduction is proper.

■ Finally, DBH objects to the $10,-092.86 setoff allowed for ABC's mechanic's lien claim on the DBH building because ABC, a foreign corporation, did not obtain a certificate of authority as required by T.C.A. § 48–1106 until after it instituted this lawsuit. Once again, we agree with the holding of the Eastern Section of this Court that under T.C.A. § 48–1106, a corporation in non-compliance may file its lawsuit, cure its non-compliance (as ABC has

done here) and then continue its litigation. *Wainwright & Ramsey, Inc. vs. City of Knoxville,* (Tenn.App.E.S., filed May 22, 1979).

THE CLAIM AGAINST NORTON.

■ John W. Norton was employed by ABC as Manager of Design Engineering at the time the events in this lawsuit took place. Norton's job was to supervise the department that took the contracts, as accepted by ABC, and completed the design and engineering work made necessary by the contract specifications. The preponderance of the evidence in this case was to the effect that the inadequacy of the roof was caused by a combination of improper specifications resulting in inadequate design for a roof system for this building and poor erection of the system. The evidence does not preponderate in favor of a conclusion that, based upon the load specifications given, the roof system was negligently designed. Therefore, we find no basis upon which John W. Norton could be held liable for the damages suffered by DBH. Norton did not perform his work negligently nor did he make any warranties or representations to DBH. He is not chargeable with his employer's conduct in representing that custom engineering would be performed that was neither assigned to Norton nor in fact done by anyone on behalf of ABC. Norton is an "in-house" engineer for ABC. His job is to do what he is told to do by his employer. The only representation made by Norton is directly to his employer that he will perform an assigned task in a proper manner. He has made no representations to the general public and as previously stated, his employer cannot make representations that would bind him personally to the general public. The task assigned him by his employer was properly performed in the manner instructed from the information supplied by his employer. Accordingly, the judgment against John W. Norton is reversed.

■ The result is that we must remand this case to the Chancery Court of McNairy County for determination of allowable dam-

ages as set forth in this opinion. We are aware of the general rule that in a *de novo* review we should render the judgment as we think should have been rendered in the Trial Court. See *Newberry vs. Newberry,* (1972 Tenn.App.W.S.) 493 S.W.2d 99. However, this record consists of 15 volumes of testimony alone. There are also exhibits consisting of tomes of invoices, etc. In addition, plaintiff attempted to prove damages under at least three different theories, systems, or measures hoping the Court would pick the most advantageous for the plaintiff. Proof of damages under any of the alleged measures is scattered throughout the record. We have neither the facilities nor the inclination to sift through the record to determine a dollar amount for damages. Hence, we must remand to the Chancery Court for that purpose, where the Chancellor, if he is so inclined, may refer the matter to a master for that determination.

The judgment against Norton is reversed.

The judgments against White Construction Company will remain undisturbed in amounts and form. The cause is remanded for fixing of the damages of DBH to be there adjudged against ABC.

Costs of Appeal are adjudged against DBH and ABC equally.

Done at Jackson in the two hundred and sixth year of our Independence and in the one hundred and eighty-seventh year of our Statehood.

MATHERNE and TOMLIN, JJ., concur.

ORDER ON PETITION TO REHEAR

A petition to rehear has been filed by DBH Attachments, Inc., DBH, Inc., and Dean Hunt. It presents no issues or authorities not considered by the Court in making its decision, and we have found nothing in the petition that justifies a conclusion different from that reached in the opinion heretofore filed.

The petition to rehear is denied and the cost is taxed to the petitioner.