IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2001, Session

## ROY EUGENE SCHRIMSHER v. SHERRY LYNN SCHRIMSHER

**Appeal from the Circuit Court for Monroe County**
**No. 8955   John Hagler, Judge**

**FILED JUNE 14, 2001**

**No. E2000-02169-COA-R3-CV**

This is a post divorce custody dispute.  Mother seeks custody of the two minor children because she believes the children are dependent and neglected.  Father seeks an increase in child support for the children.  Mother requested the Trial Judge to hear the testimony of the children who were 12 and 11 at the time. The children were the witnesses to the acts complained of in the petition to change custody.  Mother could only present hearsay evidence from the children. The Trial Judge refused to hear the testimony of the children and continued custody with Father and increased Mother's child support.  Mother then filed this appeal.  We vacate the decision of the trial court and remand for the purpose hereinafter set out.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and This Case  Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES P. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Gerald C. Russell, Maryville, Tennessee, for Appellant, Sherry Lynn Schrimsher (Roberts)

Charles E. Ridenour, Sweetwater, Tennessee, for Appellee, Roy Eugene Schrimsher

### OPINION

Pursuant to a Marital Dissolution Agreement,  Father had custody of the parties' two children. In December 1999, Mother filed a motion requesting a change of custody from Father to her and to set visitation and child support.  In February 2000, Mother filed an emergency motion for immediate change of custody.  Mother attached an affidavit from each of the children.  The Trial Judge ordered a Department of Children's Services  investigation.  Until the DCS investigation, daughter and son were sleeping in same room.  Shortly after, Father moved upstairs and gave his room to daughter. He cleaned son's room up.  Father filed an answer denying the allegations in the Mother's petition and for an increase in child support and for Mother to pay some medical expenses.

## I.  THE HEARING AND ACTION OF THE TRIAL COURT

Mother filed a formal notice pursuant to T.C.A. 36-6-106[1] for the children to testify.  The hearing was held on March 3, 2000.  Mother testified at the hearing that her primary source of her information was from her two children.  The parties' son, Michael,[2] was 12, and their daughter, Crystal,[3] was almost 14 at the time.

The children averred in their affidavits that they knew a lie from the truth and that a person can be put in jail for swearing to a lie.  They also averred the following:

1.  From August of 1998 to October of 1999, almost every night our father would leave us home overnight by ourselves.  During this time, we did not eat breakfast.  During this time, our grandmother would come to the house on school mornings to make sure we woke up in time to go to school.  This only changed when our grandmother's car tore up, and she couldn't come and wake us up.
2.  We now spend the night at our grandmother's house.  Often she does not get us up in time for school and we miss the bus.
3.  Our father writes untrue notes for us to take to school when we have missed school.[4]
4.  We still are left at home by ourselves on many nights when we don't have to go to school the next day.
5.  Our father smokes inside out home.
6.  Our father drinks beer and whiskey at our house.[5]

---

[1] 36-6-106. Child custody.

(a)  In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
. . .
(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

[2] His date of birth was 11/5/87.

[3] Her date of birth was 4/6/86.

[4] The children told Mother that Father wrote four untrue notes to excuse them from school.

[5] Mother testified that she personally saw bottles of tequila, beer and other liquors, in the refrigerator.

7.   Our father whips us with a weight lifting belt.[6]  He has whipped me once until he put bruises on me.  I remember him bruising my sister several times.[7]

8.   Allen Schrimsher is our uncle who lives with our grandmother.[8]  He drinks beer, etc. about all the time and gets drunk about every day.  He yells at us, and the threatens us.  He urinates in the living room floor.  I am afraid of him and I live in fear when staying at my grandmother's house.

9.   Our father never prepares food at our house.  He makes us cook or sends us to his mother's house to eat.

10.  I noticed that our father had these sores on his body.  Shortly thereafter, sores and itching broke out on my hands, etc.  He would not take me to the doctor even though he told me that I probably had scabies.  Our mother seen (sic) it and took me to the doctor.  The doctor said it was scabies and prescribed "acticin" cream to treat my condition.  My father went to the doctor the same weekend my mother took me.

11.  I do not want to live with my father.  I want to live with my mother and visit my father.  I request that my custody be immediately changed to my mother.

Also of concern is that daughter said that there were loaded firearms under her mattress (which Mother has seen) and a loaded shotgun in her closet.  Father at the hearing admitted that there was a sixteen gage shotgun under daughter's mattress.  He was nebulous in answering where he kept his guns.

Mother also testified that at Christmas when she visited the home, the house was trashed, she could not get into son's room, and the house had a very bad odor.  Mother testified that Father never attends son's football games and was not there for the children.  He was out riding his motorcycle with his girlfriend.

The Trial Judge was adamant in refusing to allow the children to testify.  The Trial Judge refused to admit the children's affidavits into evidence.  He did, however, allow the affidavits that are in record to be the offer of proof as to what the children would testify to.  He said:

> I know that these affidavits from children are recognized in some of our jurisdictions, and I think I understand why that is so.  And I don't fault counsel for doing that, because that's something that is being approved.  But I have to state my disapproval of that procedure. We're basically asking persons whose competency as witnesses is marginal to sign instruments prepared in good faith, but prepared by attorneys. . .
> . . .

---

[6] Father told Mother that he used a weight lifting belt to discipline the children. He also admitted at the hearing that he did whip the children with a weight lifting belt.

[7] Daughter stated in her affidavit that Father whipped her several times until he put bruises on her.

[8] After the DCS began its investigation, Allen moved out of grandmother's house.

And while I do not doubt that the children said many of these things. And I do not doubt that some of them are true. I doubt very much that this is the way to deal with this problem.

So I would not put these children on the stand and subject them to vigorous cross examination that's required in our judicial system in order for the Court to determine where the truth lies. I'm perfectly willing just for purposes of this ruling to assume that the children want to live with their mother. But that's not the end of any issue like this.

The Court ordered the Department of Children's Services to investigate to see whether there was abuse or neglect sufficient for the department to remove the children. The Department of Children's Services found no abuse or neglect sufficient for the department to take the children.

The Judge found no material change of circumstances substantial enough to change custody. The trial court admonished Father to change several things in regard to the children, but did not change custody to Mother. In this regard the Trial Judge said:

There were certain issues raised here that I think I should mention to the father. I think they'll be accepted in the spirit in which they're given. I don't think the brother should actually live with the children, the one we discussed. That doesn't mean he should not be around them. He's a member of the family, too. But I don't think he should live with them.
. . . I don't see any reason that it would be part of the order.

It seems to bother them, it perhaps bothers the children. I'm not completely sure about that, there's a possibility. I think that the father should be very careful with firearms. I'm not saying that he's not but the children are getting a little older and they obviously know where all these firearms are, or they think they do. So, I would be very careful. I would be very careful about that. I would also be careful about where alcohol is left because again the age of the children, they like to check these things out. You need to be very careful about that.

You also, I think, need to be aware of the need, not to allow or in any way even encourage your daughter to take on any kind of mother-role there. . . And I think the children should not be left alone. I think that's a dangerous proposition. I think you have to be very careful about that.

The Court increased the amount of child support paid by Mother to $104.00 per week and ordered Mother to pay ½ of the medical bills. The court also ordered Mother to pay $350.00 to Father's attorney.

## II. ISSUES

The appellant presented six issues for our review. We restate the issues to be whether the trial court erred by refusing to permit the two minor children to be called as witnesses. Because of our finding that the trial court did so err we decline to address the other issues.

## III. LAW AND DISCUSSION

Our standard of review is as follows: "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Rule 13(d), Tennessee Rules of Appellate Procedure. In a *de novo* review, the parties are entitled to a reexamination of the whole matter of law and fact and this court should render the judgment warranted by the law and evidence. ***Thornburg v. Chase***, 606 S.W.2d 672 (Tenn. Ct. App. 1980); ***American Buildings Co. v. White***, 640 S.W.2d 569 (Tenn. Ct. App. 1982); Rule 36 of the Tennessee Rules of Appellate Procedure. No such presumption, however, attaches to conclusions of law. ***Adams v. Dean Roofing Co.***, 715 S.W.2d 341 (Tenn. Ct. App. 1986).

A decree of custody remains in the control of the trial court and is subject to change or modification "as the exigencies of the case may require." T.C.A. § 36-6-101. "Exigencies" as used in the statute means new facts and changed conditions which have emerged since the decree which could not have been anticipated by the decree. ***Smith v. Haase***, 521 S.W.2d 49 (Tenn. 1975).

The modification of a prior custody determination is not changeable except for "change of circumstances." This is "defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child." ***Wall v. Wall***, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995); ***Dailey v. Dailey***, 635 S.W.2d 391 (Tenn. Ct. App. 1981). T. C. A. 36-6-106(a) sets forth the criteria for determining the appropriate child custodian.[9]

---

[9] T. C. A. 36-6-106. Child Custody.

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody; (4)

(continued...)

In this case, Mother had an impossible burden of proving the truth of the averments contained in her petition and in the children's affidavits since most of the information came directly from her children and the children were prohibited from testifying by the Trial Judge. As the Trial Judge stated at the commencement of the hearing:

> I want to hear the testimony of the parties and any adult witnesses that you think have any provative (sic) -- evidence in this case relating to custody. I'm going to be lenient in allowing hearsay testimony. Not for the purpose of proving what's in the testimony, but perhaps trying to get better understanding of the case.
>
> And then, after I have heard that testimony then I will make a decision as to whether I need anything more than hear the preference of the children.
>
> . . .
>
> I can assure you that this Court is not going to make a decision based on hearsay evidence. But it might help me understand if I feel I need to bring the children in here as witnesses.
>
> . . .
>
> I personally, as you know, ordered an investigation of the home environment to make sure that I wasn't missing something here on the allegations that there was an immediate threat to the safety of the children.

Rule 602 of the Tennessee Rules of Evidence provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony. This rule is subject to the provisions of Rule 703 relating to opinion testimony by expert witnesses."

---

[9](...continued)

The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The essence of Mother's argument is that the Trial Judge abused his discretion in not permitting the children, ages twelve and almost fourteen, to testify.

Under Rule 601 of the Tennessee Rules of Evidence "[e]very person is presumed competent to be a witness except as otherwise provided in these Rules or by statute". According to the comment, children are included, but the presumption is rebuttable. Rule 603 of the Tennessee Rules of Evidence provides "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so."

If a witness is competent, the Court is required to accept his or her testimony, but there are circumstances where the Court should tailor the manner in which the evidence is received so as to minimize any harmful effects on the witness. We find the failure of the Trial Judge to allow evidence from the children was error. *See Tennessee Dept. of Human Services v. Norton*, 928 S.W.2d 445 (Tenn. Ct. App. 1996); *Tennessee Dept. of Human Services v. Barbee*, 714 S.W.2d 263 (Tenn. 1986) (Eleven and a half years old child was competent to testify and trial court should have allowed child to testify).

In *Higgins v. Higgins*, 629 S.W. 2d 20, 22 (Tenn. Ct. App. 1981) this court held that the trial judge "simply failed to exercise his discretion. He was not in position to do so because he declined to hear even the *voir dire* qualification of the witness. Without such qualifying evidence, the Trial Judge could not, and this Court cannot, make a just decision as to whether or not the witness was qualified." We find that in this instance the Trial Judge failed to properly exercise his discretion. He was very adamant in refusing to let the children testify.

> The policy of the Trial Judge in respect to testimony of children in divorce cases arises from a commendable desire to protect them from the emotional strain and trauma engendered by the dispute between their parents. However commendable the motive and desirable the result, the right of the parties to prove the facts and the duty of the Court to ascertain the facts must take precedence over the natural desire to protect a child from temporary emotional disturbance.

*Higgins v. Higgins*, 629 S.W.2d 20, 22 (Tenn. Ct. App. 1981).

Our cases recognize the Trial Judge can allow the examination of the children in chambers with counsel and the court reporter present. *Rutherford v. Rutherford*, 971 S.W.2d 955 (Tenn. Ct. App. 1997).

Therefore, it will be necessary to vacate the judgment and remand to enable the Trial Judge to hear evidence as to the capacity of the children to understand the obligation of the oath and if they are found to have such capacity, to hear their testimony.

We also take issue with the Trial Judge concerning the method of determining the number of and the reason for the children being absence and tardy from school. While school records may be the best method of determining the number of times the children were tardy and absent, the school and its teachers usually do not know whether a parent's notes are true or not. The children themselves are the best source of that information, not school records.

We are concerned that the Trial Judge did not place in the order disposing of the issues at the trial level, the admonishments to the Father, particularly as to leaving the children alone and the firearms under the daughter's mattress. Father admitted at the hearing that there was a sixteen gage shotgun under his daughter's mattress. This is a dangerous practice and should be stopped immediately. No child should be sleeping on top of a gun. For protection of the children, it may be appropriate to place in effect continuing monitoring of the children's situation on an unannounced basis. Also, the trial court may deem it appropriate to appoint a *guardian ad litem* to represent the children's interests in this matter.

## IV. CONCLUSION

For the foregoing reasons, we vacate the judgment of the Trial Court and remand to the Trial Court for a determination of the capacity of the children to understand the obligation to tell the truth, and if they are found to have such capacity, to hear their testimony and for such further proceedings as may be necessary consistent with this opinion and collection of costs below. Costs on appeal are adjudged against the appellee, Roy Schrimsher.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE

-8-