# IN THE COURT OF APPEALS OF TENNESSEE
## AT  JACKSON
### March 5, 2002 Session

## JAMES O. WARD v. SUSAN AMPFERER WARD

**Appeal from the Chancery Court for Shelby County**
**No. 29766-1     Walter L. Evans,  Chancellor**

_____

**No. W2001-01078-COA-R3-CV - Filed December 19, 2002**

_____

Mr. James Ward filed a Compliant for divorce on July 31, 1998.  Mrs. Ward filed a Counter-Complaint for Absolute Divorce on November 30, 2000.  The trial was held February 19, 2001 through February 22, 2001 and continued March 1, 2001 to March 2, 2001. On March 2, the Chancellor issued findings of fact and divided the marital property.  Mrs. Ward asked the court to find Mr. Ward dissipated approximately $107,355 in marital assets, and requested the court award her attorney's fees as well as litigation expenses because the search for hidden funds resulted in a large portion of her attorney's fees.  The Chancellor determined Mr. Ward did not dissipate marital assets, and denied the request for attorney's fees.  The chancellor entered the final decree of divorce on April 6, 2001.  This appeal followed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed in Part, Affirmed in Part, and Remanded**

DON R. ASH, S.J., delivered the opinion of the court, in which DAVID R. FARMER, J. and, ALAN E. HIGHERS, J. joined.

Daniel Loyd Taylor, Memphis, Tennessee, for the appellant, Susan Ampferer Ward.

Larry Rice, Memphis, Tennessee, and Laura D. Rogers, Memphis, Tennessee, for the appellee, James O. Ward.

**OPINION**

## I.      Facts

Appellant Susan Ampferer Ward and Appellee James O. Ward married August 26, 1966.  During the marriage, the parties divided responsibilities.  Mr. Ward provided income from his job with Federal Express, maintained the home's exterior and surrounding property, as well as handling their investments.  Ms. Ward maintained the household, cooked meals, cared for the children, and paid monthly bills.

Mr. Ward's salary was divided and separately maintained in different accounts. First, Mr. Ward deposited his paycheck in the Federal Express Credit Union.  From this account, Mr. Ward covered expenses related to his responsibilities to the exterior of the home, including the mortgages, and the property improvements.  He also maintained a separate account at Boatman's Bank.  Next, Mr. Ward drew a check to the order of Ms. Ward to cover household expenses from the Credit Union.  Ms. Ward controlled a jointly held family checking account from which she paid the family bills. Any money left over was considered by the parties as Ms. Ward's money.  In the late 1980's the marriage soured for various reasons.

In early 1994, Mr. Ward came into a substantial amount of money through one of his investments.  Rather than depositing this money in his Boatman's Bank account or the Credit Union account, Mr. Ward entered into an arrangement with an acquaintance Leigh Blanchard.  Under their arrangement, Mr. Ward gave Ms. Blanchard money and then she deposited it in an Enterprise Bank account in Mr. Ward's name.  When he needed cash, she withdrew it for him.  At times, Ms. Blanchard would simply tender cash from a safe she maintained as a loan against the Enterprise account.  Due to the complexity of their financial dealings, Mr. Ward and Ms. Blanchard kept a ledger of their transactions.  Mr. Ward and Ms. Blanchard's relationship turned intimate later in 1994 and continued through 2000.

The parties separated in June 1997.  Mr. Ward filed a Complaint for Divorce on July 31, 1998. Ms. Ward filed a Counter-Complaint for Absolute Divorce on November 30, 2000, and the trial was held four months later. February 19, 2001 through February 22, 2001 and on March 1 through March 2, 2001.  On March 2, the Chancellor issued his findings and divided the marital property.  Mrs. Ward argued Mr. Ward dissipated approximately $107,000 through his relationship with Ms. Blanchard.  Additionally, she sought an award of attorney's fees for costs incurred while tracing the financial transactions with Ms. Blanchard.  The Chancellor determined Mr. Ward did not dissipate marital assets and denied the request for attorney's fees.  The chancellor entered the final divorce decree on April 6, 2001.  Mrs. Ward filed a notice of appeal on May 3, 2001.

## II.     Standard of Review

We review the findings of fact and conclusions of law by the trial court in this non-jury trial *de novo* upon the trial court record. T.R.A P. 13(d).  We presume the correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Id.  "In a de novo review, the parties are entitled to a reexamination of the

whole matter of law and fact and this court should render the judgment warranted by the law and evidence." Bookout v. Bookout, 954 S.W.2d 730, 731 (Tenn. Ct. App. 1997) citing Thornburg v. Chase, 606 S.W.2d 672 (Tenn. Ct. App. 1980); American Buildings Co. v. White, 640 S.W.2d 569 (Tenn. Ct. App. 1982); Tennessee Rules of Appellate Procedure, Rule 36. The trial court's conclusions of law have no presumption of correctness. Adams v. Dean Roofing Co., 715 S.W.2d 341, 343 (Tenn. Ct. App. 1986). Furthermore, we defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. Manis v. Manis, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001).

## III.    Dissipation of Assets

In an action for divorce or legal separation, the trial court may equitably divide marital property without regard to fault, upon the request of either party. Tenn. Code Ann. §36-4-121 (a)(1)(2001). This statute sets out the General Assembly's basic premise regardingthe division of marital property, namely, it should be equitably based upon what "may be just and reasonable under the facts and circumstances of the case." Fisher v. Fisher, 648 S.W.2d 244, 246 (Tenn. 1983) quoting Langford v. Langford, 421 S.W.2d 632, 634 (Tenn. 1967).

Trial courts first classify property as marital or separate, according to the definitions set forth in T.C.A. § 36-4-121(b)(1)(A) and (B). Upon classifying the property, the trial court divides marital property weighing the evidence presented at trial as it relates to the factors listed in T.C.A. § 36-4-121(c). "[T] he trial judge's goal is to divide the marital property in an essentially equitable manner." Kinard v. Kinard, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). An equitable division is not necessarily an equal one. Barnhill v. Barnhill, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). One factor to be considered is a party's dissipation of marital property. Tenn. Code Ann. § 36-4-121(c)(5)(2001).

At trial, Ms. Ward argued Mr. Ward dissipated $107,000 in marital assets by transferring approximately $132,000 of marital funds to Ms. Blanchard[1]. In early 1994, Mr. Ward liquidated an investment property worth approximately $53,000. According to Mr. Ward, he did not want to put this money in the family checking account managed by Ms. Ward because of her gambling.[2] Instead, Mr. Ward and Ms. Blanchard allegedly established a financial management relationship where Mr. Ward entrusted marital funds to Ms. Blanchard.[3] Apparently, Mr. Ward gave Ms. Blanchard the money and she would

---

[1] Mr. Ward put $25,000 of this amount toward the repayment of an equity loan on the parties' property. Thus, the alleged dissipated amount is reduced to approximately $107,000.

[2] The record clearly reflects Ms. Ward's gambling activities between 1994 and 1997.

[3] Ms. Blanchard is employed by an asset management company in the stock-trading department. Regarding the details of the financial management relationship between Mr. Ward and Ms. Blanchard, this court makes no factual determination based upon the trial court's finding that both witnesses testimony was

3

deposit it into an Enterprise Bank account in Mr. Ward's name. When Mr. Ward needed money, he let Ms. Blanchard know and she would get it either from the Enterprise account or from her personal safe. Mr. Ward and Ms. Blanchard allegedly maintained a ledger recording each transaction.[4] When all was said and done, Mr. Ward alleges he spent the estimated $107,000 on himself because of his increased daily expenses due to the marital problems between himself and Ms. Ward.

The Chancellor found Mr. Ward did not dissipate marital property through his alleged transactions with Ms. Blanchard. In reaching this conclusion, the Chancellor stated

> in order for this court to conclude that there had been a dissipation of assets this court has to find that, number one, there had been some sort of fraud that exists and that there was nothing that…to counterbalance this alleged discretionary expenditure by Mr. Ward on the other hand.[5]…[t]he court is not satisfied with the proof to the point that the court has to conclude that Mr. Ward used $107,000 in a fraudulent manner that the court should take into consideration in making a disproportionate allocation of the marital assets.

We do not find the dicta cited in Walker to be persuasive. Under Tennessee law, a finding of fraud is not a prerequisite to a court finding a party dissipated marital assets.

The court notes dissipation is not defined in the statute. In such circumstances, courts must look to the plain language of the statute and apply the ordinary meaning of the words. Cohen v. Cohen, 937 S.W.2d 823, 827 (Tenn. Ct. App. 1996). "Dissipate" is defined "[t]o destroy or waste, as to expend funds foolishly." Black's Law Dictionary 473 (6th ed. 1990). This Court finds instructive an article by Lee R. Russ examining how courts around the country have dealt with the difficult task of making the fine-line distinction between dissipation and discretionary spending. See Lee R. Russ, Annotation, Spouse's Dissipation of Marital Assets Prior to Divorce as a Factor in Divorce Court's Determination of Property Division, 41 A.L.R. 4th 416 (1985). Trial courts must distinguish between what marital expenditures are wasteful and self-serving and those which may be ill-advised but not so far removed from "normal" expenditures occurring previously within the marital relationship to render them destructive.

---

credible. Curiously, Mr. Ward had no explanation for why he did not just deposit the $53,000 in the Boatman's account, which Ms. Ward did not know existed.

[4] Unfortunately, the ledger was destroyed following the end of Mr. Ward and Ms. Blanchard's financial relationship. Because Mr. Ward could not account for the money deposited, withdrawn and spent, he created a sheet estimating expenses [Exhibit 7] which is discussed later in this opinion.

[5] Apparently the Chancellor relied upon an unreported case, Walker v. Walker, No 01-A-01-9001-CH-00029, 1990 Tenn. App. LEXIS 440 (Tenn. Ct. App. June 27, 1990), when deciding the dissipation issue. In Walker, an issue was whether funds expended on the children during marriage could be considered in awarding an unequal property division. Id. at *9. In deciding this issue, the court said "[a]bsent fraud, a divorce court may not order a reimbursement or compensatory inequality of division of property for dissipation of marital property during the marriage." Id. at *11.

4

In determining whether dissipation occurred, we find trial courts should consider the following: (1) whether the evidence presented at trial supports the alleged purpose of the various expenditures, and if so, (2) whether the alleged purpose equates to dissipation under the circumstances. Id. at 420-421. The first prong is an objective test. To satisfy this test, the dissipating spouse can bring forward evidence, such as receipts, vouchers, claims, or other similar evidence that independently support the purpose as alleged. The second prong requires the court to make an equitable determination based upon a number of factors. Those factors include: (1) the typicality of the expenditure to this marriage; (2) the benefactor of the expenditure, namely, whether it primarily benefited the marriage or primarily benefited the sole dissipating spouse; (3) the proximity of the expenditure to the breakdown of the marital relationship; (4) the amount of the expenditure. Id. at 421.

We believe the above-announced analysis will be helpful in guiding trial courts when making this distinction. We reverse and remand back to the trial court to decide whether the facts support Ms. Ward's allegation that Mr. Ward dissipated approximately $107,000 of marital assets in his dealings with Ms. Blanchard applying the factors previously enumerated above.

## IV.     Admission of Estimated Expenditures into Evidence

To rebut Ms. Ward's allegation regarding Mr. Ward's dissipation of $107,000 in marital assets, Mr. Ward sought to present evidence of his yearly expenditures. Over Ms. Ward's objections the Chancellor allowed Mr. Ward to testify from a document marked Exhibit 7 estimating Mr. Ward's expenditures between 1990 and 1997 and admitted the document into evidence. Ms. Ward makes two arguments regarding the exhibit's admission: (1) Exhibit 7 violates Rule 1006 of the Tennessee Rules of Evidence as a summary of documents without supporting information and (2) Mr. Ward's counsel failed to lay the proper foundation under Rule 612 of the Rules of Evidence for a prior recollection refreshed.

### (1)     Rule 1006 summary of documents

Rule 1006 operates as an exception to the best evidence rule by allowing a party to admit a summary of originals rather than the burdensome production of "voluminous writings, recordings or photographs which cannot conveniently be examined in court." Tenn. R. Evid. 1006. For the summary to be admissible, the party seeking admission must lay the proper foundation, consisting of testimony that "(1) the original evidence is voluminous, and (2) the summary is sufficiently accurate in representing the original evidence." Neil P. Cohen et al., Tennessee Law of Evidence, § 10.06(3) at 10-21 (4th ed. 2000). At trial, Mr. Ward admitted he no longer possessed the receipts, vouchers, and other similar evidence to support his estimated expenses in Exhibit 7. He failed to meet the first prong because the original evidence is not voluminous - it is nonexistent.

Mr. Ward argues Exhibit 7 was not a summary of documents and therefore, Rule 1006 does not apply. He maintains Exhibit 7 is admissible under Rule 106 as a writing of a party. Rule 106 deals with the situation where one party offers only a portion of a

writing or recording and the other party seeks out of fairness to place that portion into context by requesting the entire writing or recording be presented into evidence. <u>State v. Keough</u>, 18 S.W.3d 175,182 (Tenn. 2000). We fail to see how Rule 106 is applicable.

(2)     Foundation necessary to refresh prior recollection

Ms. Ward asserts the proper foundation was not laid by Mr. Ward to establish he needed his memory refreshed. Rule 612 requires a minimal foundation be laid when a witness on the stand cannot remember certain facts. On direct examination, the witness must: (1) be unable to recall requested information, (2) counsel approaches and allows the witness to inspect the writing, which refreshes the witness's memory, (3) the writing is taken back by counsel, (4) the witness then testifies from his refreshed memory. Tenn. R. Evid. 612 Advisory Committee's Comments. Clearly, Mr. Ward estimated his expenses because he could not recall exactly on what he had spent his money between 1990 and 1997. However, he was allowed to testify directly from Exhibit 7 over Ms. Ward's objections.

Regarding both the Rule 1006 issue and Rule 612 issue, we find the trial court erred in admitting Exhibit 7 into evidence. Mr. Ward failed to establish the required prerequisites under both rules. However, the trial court stated it would not consider Exhibit 7 as substantive evidence. The record clearly establishes the Chancellor relied solely upon witness testimony to establish the credibility of the estimated amounts. Therefore, we hold the Chancellor erred under Rule 1006 and Rule 612 regarding the introduction into evidence of Exhibit 7. However, we hold the admission was harmless error and did not prejudice Ms. Ward's rights. T.R.A.P. 36(b).

**Attorney's Fees**

Mrs. Ward seeks attorney's fees for costs incurred in searching, finding and tracing the approximately $107,000 Mr. Ward diverted to Ms. Blanchard. "The decision to award attorney's fees to a party in a divorce proceeding, and the amount thereof, are largely within the trial court's discretion and will not be disturbed upon appeal unless the evidence preponderates against such a decision." <u>Houghland v. Houghland</u>, 844 S.W.2d 619, 623 (Tenn. App. 1992). We find no evidence to reverse the trial court's denial of attorney's fees.

**Conclusion**

We conclude it was reversible error to require fraud to be shown as a prerequisite to finding marital assets were dissipated. For the foregoing reasons, the judgment of the

6

trial court is reversed in part, remanded in part, and affirmed in part, as consistent with this opinion. Costs of this appeal are taxed to Mr. Ward.

_____
Don R. Ash
Special Judge